[No. B162070. Second Dist., Div. Seven. May 28, 2003.]

MARTIN GAYTAN, Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD, LOS ANGELES
UNIFIED SCHOOL DISTRICT et al., Respondents.

202

COUNSEL

Rose, Klein & Marias and G. Ronald Feenberg for Petitioner.

Law Office of George M. Theofanis and Kim G. Davidson for Respondents.

OPINION

**WOODS, J.**—Petitioner, Martin Gaytan, a gardener for respondent, Los Angeles Unified School District (LAUSD), injured his left foot during work and was referred for treatment to David Heskiaoff, M.D. Dr. Heskiaoff released Gaytan back to work without restrictions, and from continuing medical care. Gaytan objected pursuant to Labor Code sections 4061[1] and 4062.[2] Gaytan subsequently obtained a comprehensive medical evaluation

---

[1]Labor Code section 4061, subdivision (c) in relevant part provides: "If the parties do not agree to a permanent disability rating based on the treating physician's evaluation or the assessment of need for continuing medical care, and the employee is represented by an attorney, the employer shall seek agreement with the employee on a physician to prepare a comprehensive medical evaluation of the employee's permanent impairment and limitations and any need for continuing medical care resulting from the injury. If no agreement is reached within 10 days, or any additional time not to exceed 20 days agreed to by the parties, the parties may not later select an agreed medical evaluator. Evaluations . . . obtained prior to the period to reach agreement shall not be admissible . . . . After the period to reach agreement has expired, either party may select a qualified medical evaluator to conduct the comprehensive medical evaluation."
 All further references to statute are to the Labor Code unless stated otherwise.
[2]Section 4062, subdivision (a) provides in relevant part: "If either the employee or employer objects to a medical determination made by the treating physician concerning the permanent and stationary status of the employee's medical condition, the employee's preclusion or likely preclusion to engage in his or her usual occupation, the extent and scope of medical treatment, the existence of new and further disability, or any other medical issues not covered by Section 4060 or 4061, the objecting party shall notify the other party in writing of the objection within 20 days of receipt of the report if the employee is represented by an

from Dennis Ainbinder, M.D, as a qualified medical evaluator. Dr. Ainbinder recommended treatment and Gaytan selected Dr. Ainbinder as the new primary treating physician.[3]

After Dr. Ainbinder released Gaytan from care, the parties disputed treatment, disability, and whether Dr. Heskiaoff or Dr. Ainbinder was the primary treating physician entitled to the rebuttable presumption of correctness under section 4062.9.[4] The workers' compensation administrative law judge (WCJ) determined that Dr. Heskiaoff remained the primary treating physician with the presumption, and denied the treatment and disability recommended by Dr. Ainbinder. The WCJ also concluded that Dr. Heskiaoff's opinion was not rebutted because the report by Dr. Ainbinder as qualified medical evaluator was inadmissible for the failure to review medical records, and Dr. Ainbinder's opinion was not substantial evidence. Gaytan petitioned for reconsideration and the Workers' Compensation Appeals Board (WCAB) agreed that medical records can be addressed in supplemental reports, and Dr. Ainbinder's report as qualified medical evaluator was admissible. However, the WCAB affirmed the decision because the primary treating physician does not change until the dispute is decided by

---

attorney or within 30 days of receipt of the report if the employee is not represented by an attorney. These time limits may be extended for good cause or by mutual agreement. If the employee is represented by an attorney, the parties shall seek agreement with the other party on a physician . . . to prepare a report resolving the disputed issue. If no agreement is reached within 10 days, or any additional time not to exceed 20 days agreed upon by the parties, the parties may not later select an agreed medical evaluator. Evaluations obtained prior to the period to reach agreement shall not be admissible . . . . After the period to reach agreement has expired, the objecting party may select a qualified medical evaluator . . . ."

[3]California Code of Regulations, title 8, section 9785, subdivision (a)(1) defines the primary treating physician as: "[T]he physician who is primarily responsible for managing the care of an injured employee, and who has examined the employee at least once for the purpose of rendering or prescribing treatment and has monitored the effect of the treatment thereafter. The primary treating physician is the physician selected by the employer or the employee pursuant to Article 2 (commencing with section 4600) . . . ."

In addition, section 4061.5 refers to: "The treating physician primarily responsible for managing the care of the injured worker or the physician designated by that treating physician shall, in accordance with rules promulgated by the administrative director, render opinions on all medical issues necessary to determine eligibility for compensation. In the event that there is more than one treating physician, a single report shall be prepared by the physician primarily responsible for managing the injured worker's care that incorporates the findings of the various treating physicians."

[4]For injuries on or after January 1, 1994, but before January 1, 2003, section 4062.9 stated: "In cases where an additional comprehensive medical evaluation is obtained under Section 4061 or 4062, the findings of the treating physician are presumed to be correct. This presumption is rebuttable and may be controverted by a preponderance of medical opinion indicating an [sic] different level of impairment. However, this presumption shall not apply where both parties select qualified medical examiners."

the WCJ under California Code of Regulations title 8, section 9785, subdivision (b).[5]

Gaytan petitions for writ of review and contends that he complied with sections 4061 and 4062, which resolves the dispute under California Code of Regulations, title 8, section 9785, subdivision (b), and he was entitled to select Dr. Ainbinder as the primary treating physician with the presumption. Even if the presumption remained with Dr. Heskiaoff, Gaytan argues further, the WCAB should have remanded the matter for consideration of Dr. Ainbinder's newly admitted report. Dr. Ainbinder's opinion as a whole is substantial evidence, unlike the opinion of Dr. Heskiaoff which was rebutted.

LAUSD answers that Gaytan's selection of Dr. Ainbinder as the primary treating physician was improper and waived. LAUSD also alleges that Dr. Heskiaoff's opinion is substantial evidence and presumed correct, and is not rebutted by the inconsistent opinion of Dr. Ainbinder.

We agree with Gaytan that after compliance with sections 4061 and 4062, an injured worker may obtain valid treatment from the qualified medical evaluator as the newly selected primary treating physician. However, we also agree with the WCAB that if treatment or the selection is disputed, the dispute must be resolved under California Code of Regulations, title 8, section 9785, subdivision (b), in order to validate the treatment and apply the presumption under section 4062.9 to the opinion of the alleged newly selected primary treating physician. Since we further conclude that the WCJ's findings regarding these issues were critical in this case, consistent with due process the matter should have been remanded for the WCJ to consider Dr. Ainbinder's newly admitted report, his opinion as a whole and the entire record. Accordingly, the WCAB's decision is annulled and the matter is remanded for further proceedings consistent with this opinion.

### FACTUAL AND PROCEDURAL BACKGROUND

Martin Gaytan, a gardener for LAUSD, injured his left foot when he tripped over a sprinkler at work on September 26, 2000. Gaytan also alleges

---

[5]California Code of Regulations, title 8, section 9785, subdivision (b) states: "There shall be no more than one primary treating physician at a time. Where the primary treating physician discharges the employee from further treatment and there is a dispute concerning the need for continuing treatment, no other primary treating physician shall be identified unless and until the dispute is resolved. If it is determined that there is no further need for continuing treatment, then the physician who discharged the employee shall remain the primary treating physician. If it is determined that there is further need for continuing treatment, a new primary treating physician may be selected."

injury to the left ankle, but when he completed a workers' compensation claim form only the left big toe was indicated.

LAUSD referred Gaytan for treatment to Southern California Medical Group. The first medical report indicated pain and tenderness from the left great toe to the left ankle, but no swelling or bruise. Gaytan was provided medication and treatment, and taken off work. In an interim report, Gaytan was stated to have full range of motion in the left ankle, with mild pain and no swelling.

On or about November 1, 2000, Gaytan was referred to orthopedist David Heskiaoff, M.D. Dr. Heskiaoff diagnosed left foot sprain, left great toe contusion and plantar fascitis. Gaytan was released to regular work, with recommendation of continued physical therapy, a left shoe insert and anti-inflammatory medication.

Dr. Heskiaoff reexamined Gaytan on December 6, 2000. In a report characterized as the final evaluation by the primary treating physician, Gaytan was stated to be permanent and stationary,[6] the sprain, contusion and plantar fascitis being resolved, with no work restrictions. Dr. Heskiaoff further recommended that, "If he has a flare-up of symptoms, the use of non-steroidal anti-inflammatory medication, such as Clinoril, is all that is prescribed for him."

Meanwhile, Gaytan retained counsel and objected to the conclusions of the treating physicians under sections 4061 and 4062 in a letter dated December 18, 2000. Gaytan's letter also offered several physicians as an agreed medical examiner to resolve the medical issues. Gaytan advised there would be an evaluation by a qualified medical evaluator if there was no response within 20 days.

Apparently, LAUSD did not respond and in a letter dated February 8, 2001, Gaytan advised of an examination scheduled with Dennis Ainbinder, M.D. In another letter, Gaytan provided notice that he was selecting Dr. Ainbinder as the "primary treating doctor" under section 4600.[7]

Dr. Ainbinder issued a first report indicating the initial examination or treatment date was February 14, 2001. An ankle sprain was diagnosed,

---

[6] A permanent and stationary status can be defined as: "[A]fter the employee has reached maximum medical improvement or his or her condition has been stationary for a reasonable period of time." (Cal. Code Regs., tit. 8, § 10152.)

[7] Section 4600 in relevant part states: "Medical, surgical, chiropractic, acupuncture, and hospital treatment, . . . that is reasonably required to cure or relieve from the effects of the injury shall be provided by the employer. In the case of his or her neglect or refusal seasonably to do so, the employer is liable for the reasonable expense incurred by or on behalf of the employee in providing treatment. After 30 days from the date the injury is reported, the

medication, therapy, and an MRI were recommended, and Gaytan was stated to be temporarily disabled from work.

On February 15, 2001, Gaytan began physical therapy with Steven Danchik, R.P.T. The record indicates several treatments were paid by LAUSD. Gaytan also received state disability benefits beginning on February 20, 2001.

In a medical-legal report dated February 14, 2001, Dr. Ainbinder characterized his role as a qualified medical evaluator. Dr. Ainbinder described Gaytan's duties and treatment, and noted his complaints increased after returning to work. Dr. Ainbinder diagnosed a sprained left ankle, prescribed medication, and recommended an MRI and conservative treatment. Dr. Ainbinder also reported work restrictions of no very heavy lifting and prolonged standing, walking, squatting, and ascending and descending stairs, although Gaytan could continue working. Dr. Ainbinder cautioned that he had not received or reviewed medical records, and his conclusions could change. Dr. Ainbinder signed the report on March 14, 2001.

Gaytan was reevaluated by Dr. Heskiaoff on March 21, 2001, whose report referred to the examination as a comprehensive medical-legal orthopedic evaluation. Gaytan informed Dr. Heskiaoff that his complaints had increased after working in the cold and rain, for which he received treatment and was placed on temporary disability by Dr. Ainbinder. Dr. Heskiaoff's diagnosis was history of left foot plantar fascitis, a new shoe insert was recommended, and the discussion in the report concluded with, "It is my opinion that Mr. Gaytan did not suffer any new injury to his left foot in February of 2000 [2001]. The treatments he has been provided should be under the heading of the prior September 26, 2000, injury." Dr. Heskiaoff also summarized records from Southern California Medical Group in the report.

In a letter dated April 6, 2001, Gaytan again gave notice that Dr. Ainbinder was selected as the "primary treating doctor." In a separate letter, Gaytan advised there was an appointment scheduled for April 11, 2001.

Dr. Ainbinder reported that he had originally examined Gaytan as a qualified medical evaluator, and was now designated as the primary treating physician. Dr. Ainbinder indicated Gaytan's condition had worsened, treatment and temporary disability should continue, and an MRI was necessary.

Dr. Ainbinder subsequently declared Gaytan permanent and stationary in a report dated June 20, 2001. Dr. Ainbinder noted that the MRI revealed a

---

employee may be treated by a physician of his or her own choice or at a facility of his or her own choice within a reasonable geographic area . . . ."

sprain of the anterior talofibular ligament as well as a mild degree of fluid in the left ankle joint. In addition, Dr. Ainbinder summarized prior medical records. Dr. Ainbinder's diagnosis remained a sprained left ankle, and in regards to permanent disability the report stated that, "I would not change any of my work restrictions from that recommended in my report of February 14, 2001."

The parties proceeded to trial and the issues included temporary disability from February 13, 2001, through June 20, 2001, permanent disability, whether Dr. Heskiaoff was the primary treating physician entitled to the presumption under section 4062.9, treatment recommended by Dr. Ainbinder and admissibility of his February 14, 2001, medical-legal report.

Gaytan testified that his pain continued and worsened after he returned to work and was released by Dr. Heskiaoff. Gaytan explained that he was told by LAUSD to wait 90 days for treatment because he had been released. He then began receiving treatment through Dr. Ainbinder, and state disability. Gaytan claimed that after treatment with Dr. Ainbinder and returning to work, he still had disability regarding his left foot, ankle, and great toe.

The WCJ determined that Dr. Heskiaoff continued as the primary treating physician and Gaytan sustained industrial injury to the left foot, but not the ankle. The WCJ denied the treatment recommended by Dr. Ainbinder, and the temporary and permanent disability claimed. In the opinion on decision, the WCJ explained that, "In his report dated December 6, 2000 Dr. Heskiaoff found applicant permanent and stationary without the present need for further medical treatment. Dr. Ainbinder who saw applicant thereafter, was thus precluded from becoming the primary treating physician under the Tenet case." (See *Tenet/Centinela Hospital Medical Center v. Workers' Comp. Appeals Bd.* (2000) 80 Cal.App.4th 1041 [95 Cal.Rptr.2d 858] (*Tenet*).)

In *Tenet*, the employee sustained industrial injury to the knee, and two knee surgeries were performed by the primary treating physician. Subsequently, the primary treating physician issued a permanent and stationary report without work restrictions. The report also indicated that the employee was released to home exercise and from further visits, with provision for future medical care when the need arose. The employee, who was unrepresented, objected and was provided with a three-physician panel pursuant to section 4061. Rather than select a qualified medical evaluator, the employee retained an attorney and began treatment with another physician five months later. The WCJ and WCAB concluded that the employee was not actually released from treatment and was entitled to change primary treating physicians.

The Court of Appeal agreed with the WCAB that an injured worker has the right to change primary treating physicians until discharged. (*Tenet, supra,* 80 Cal.App.4th at p. 1046.) However, the Court of Appeal held that pursuant to California Code of Regulations, title 8, section 9785, subdivision (b), the employee could not change primary treating physicians after discharge from ongoing doctor-involved treatment, even if future treatment is medically probable, without complying with the procedures set forth in section 4061 or 4062. (*Tenet,* at pp. 1046-1048.)

The WCJ also determined that the opinion of Dr. Ainbinder did not rebut the presumption under section 4062.9 that Dr. Heskiaoff was correct. The WCJ found Dr. Ainbinder's February 14, 2001, report inadmissible because medical records had not been reviewed, and the June 20, 2001, report was dependent on the inadmissible report.

Gaytan petitioned for reconsideration with the WCAB. Gaytan contended that he had complied with sections 4061 and 4062, and *Tenet,* when he was examined by Dr. Ainbinder as a qualified medical evaluator. Gaytan argued further that he was entitled to select Dr. Ainbinder as the primary treating physician with the presumption, according to *Gee v. Workers' Comp. Appeals Bd.* (2002) 96 Cal.App.4th 1418 [118 Cal.Rptr.2d 105] (*Gee*).

In *Gee,* an unrepresented employee's condition worsened after being found permanent and stationary by the primary treating physician, who recommended consultation with a qualified medical evaluator. The employee selected a qualified medical evaluator from a three-physician panel provided pursuant to sections 4061 and 4062. The employee then designated the qualified medical evaluator, who recommended treatment, as the primary treating physician. The employee subsequently retained counsel and was examined by a qualified medical evaluator for the employer. At trial the parties disputed whether a qualified medical evaluator could properly become the primary treating physician, without specifically raising the presumption under section 4062.9.

The WCJ in *Gee* concluded that the qualified medical evaluator could be properly selected as the primary treating physician, but the presumption was not raised at trial and the employer's qualified medical evaluator was more persuasive and followed. The WCAB affirmed based on *Davis v. Interim Healthcare* (2000) 65 Cal.Comp.Cases 1039 (*Davis*) (§ 4062.9 presumption must be raised no later than trial), and added that the presumption never arose because both sides selected qualified medical evaluators. The Court of Appeal disagreed with the holding of *Davis* and determined that the presumption under section 4062.9 arose when the operative facts were established by pleadings, stipulations, judicial notice or evidence. (*Gee, supra,* 96

Cal.App.4th at pp. 1425-1426, 1429.) In regards to the presumption being inapplicable under section 4062.9 because there were two qualified medical evaluators, the Court of Appeal noted that the official form sent to the employee advised of the right to treatment by the qualified medical evaluator. (*Gee*, at p. 1428.) The Court of Appeal concluded that the presumption applied because selecting the qualified medical evaluator as the primary treating physician cancelled the former designation, and only the employer's qualified medical evaluator remained. (*Id.* at pp. 1427-1429.)

Gaytan also alleged in the petition for reconsideration that Dr. Ainbinder's February 14, 2001, report was admissible because prior medical records were summarized in a later report, which complies with section 4628.[8] In addition, argued Gaytan, Dr. Ainbinder's opinion rebutted the opinion of Dr. Heskiaoff, which was not substantial evidence, because Dr. Ainbinder addressed the medical records, MRI and left ankle.

In the report on reconsideration, the WCJ responded that *Gee* did not control because the employee was unrepresented and the notice sent indicated the qualified medical evaluator could be chosen as the primary treating physician. Even if *Gee* is applicable, the WCJ explained, the section 4062.9 presumption should not be applied to Dr. Ainbinder because the February 14, 2001, report was inadmissible and the permanent disability remained unchanged after the medical records were reviewed. The WCJ noted that Dr. Heskiaoff reviewed prior medical records in a report dated August 7, 2001, however, the report was excluded from evidence for not being listed at the mandatory settlement conference.[9] Regardless, Dr. Heskiaoff's conclusions are substantial evidence, explained the WCJ, because the records from

[8]Section 4628, subdivision (a) in relevant part states: "no person, other than the physician who signs the medical-legal report . . . shall examine the injured employee or participate in the nonclerical preparation of the report, including all of the following: [¶] (1) Taking a complete history. [¶] (2) Reviewing and summarizing prior medical records. [¶] (3) Composing and drafting the conclusions of the report."

Subdivision (c) adds: "If the initial outline of a patient's history or excerpting of prior medical records is not done by the physician, the physician shall review the excerpts and the entire outline and shall make additional inquiries and examinations as are necessary and appropriate to identify and determine the relevant medical issues."

Subdivision (e) provides: "Failure to comply with the requirements of this section shall make the report inadmissible as evidence and shall eliminate any liability for payment of any medical-legal expense incurred in connection with the report."

See also California Code of Regulations, title 8, section 9793, subdivision (k), which provides for supplemental medical-legal evaluations and reports based on the review of records, test results or other medically relevant information which was not available at the time of the initial evaluation.

[9]Section 5502, subdivision (d)(3) provides: "If the claim is not resolved at the mandatory settlement conference, the parties shall file a pretrial conference statement noting the specific issues in dispute, each party's proposed permanent disability rating, and listing the exhibits,

Southern California Medical Group do not refer to the ankle which complaint arose only after Dr. Ainbinder's involvement, and there were no objective findings.

The WCAB basically affirmed the WCJ's decision. The WCAB agreed that *Tenet* controlled because Gaytan could not obtain a new primary treating physician entitled to the presumption until the issues that initiated the procedures under sections 4061 and 4062 were resolved by the WCJ pursuant to California Code of Regulations, title 8, section 9785, subdivision (b). The WCAB distinguished *Gee*, where the employer obtained a qualified medical evaluator after the change in primary treating physicians. And although the WCAB admitted Dr. Ainbinder's report into evidence, because the lack of medical record review goes to weight rather than admissibility, the outcome was not affected since the presumption remained with Dr. Heskiaoff until the WCJ decided the issue.

Gaytan petitions for writ of review. Gaytan maintains that he complied with sections 4061 and 4062 and *Tenet*, which satisfies California Code of Regulations, title 8, section 9785, sudivision (b) under *Gee*, and Dr. Ainbinder was validly selected as the primary treating physician entitled to the presumption. Gaytan contends further that it was prejudicial error for the WCAB to affirm without remanding for the WCJ to consider Dr. Ainbinder's newly admitted report and his opinion as a whole. Dr. Ainbinder's whole opinion is substantial evidence and should be followed, unlike the opinion of Dr. Heskiaoff which was rebutted, because Dr. Ainbinder addressed the medical records, MRI and ankle injury.

LAUSD answers that Gaytan improperly selected Dr. Ainbinder as the primary treating physician to gain the presumption under section 4062.9. LAUSD argues that Dr. Ainbinder was designated and acted as the primary treating physician when physical therapy began, which violated *Tenet*. LAUSD claims that it never authorized or paid the therapy based on Dr. Heskiaoff's reports. LAUSD asserts further that Gaytan failed to comply with California Code of Regulations, title 8, section 9785, subdivision (b), and *Gee* is distinguishable because a qualified medical evaluator was not obtained in response to Dr. Ainbinder. Moreover, Gaytan never raised the presumption at trial and the issue was waived under *Davis*.

LAUSD also contends that the WCAB correctly affirmed the decision without remand because the WCJ considered Dr. Ainbinder's February 14,

---

and disclosing witnesses. Discovery shall close on the date of the mandatory settlement conference. Evidence not disclosed or obtained thereafter shall not be admissible unless the proponent of the evidence can demonstrate that it was not available or could not have been discovered by the exercise of due diligence prior to the settlement conference."

2001, report. The WCJ found it was not substantial evidence which could rebut the presumption, because Dr. Ainbinder failed to review medical records as the qualified medical evaluator. In addition, the WCJ relied on the opinion of Dr. Heskiaoff, which is substantial evidence because the left ankle did not arise until Dr. Ainbinder's involvement.

## DISCUSSION

### I. *Standard of Review*

■ On appeal the reviewing court is bound by the factual findings and decision of the WCAB if supported by substantial evidence. (*Western Growers Ins. Co. v. Workers' Comp. Appeals Bd.* (1993) 16 Cal.App.4th 227, 233 [20 Cal.Rptr.2d 26] (*Western Growers*).) Substantial evidence is not shown by isolating evidence which supports the decision while ignoring other facts which rebut or explain that evidence. (*LeVesque v. Workmen's Comp. App. Bd.* (1970) 1 Cal.3d 627, 638-639 [83 Cal.Rptr. 208, 463 P.2d 432] (*LeVesque*); *Rosas v. Workers' Comp. Appeals Bd.* (1993) 16 Cal.App.4th 1692, 1701 [20 Cal.Rptr.2d 778] (*Rosas*).) However, the reviewing court may not reweigh evidence or decide disputed facts. (*Western Growers, supra,* 16 Cal.App.4th at p. 233.) While workers' compensation is liberally construed with the purpose of extending benefits to industrially injured workers (§ 3202; *Arriaga v. County of Alameda* (1995) 9 Cal.4th 1055, 1065 [40 Cal.Rptr.2d 116, 892 P.2d 150]), an appellate court is not bound to accept factual findings if unreasonable, illogical, arbitrary, improbable, or inequitable considering the entire record and overall statutory scheme. (*Western Growers, supra,* 16 Cal.App.4th at p. 233; *Bracken v. Workers' Comp. Appeals Bd.* (1989) 214 Cal.App.3d 246, 254 [262 Cal.Rptr. 537] (*Bracken*).)

■ In contrast, interpretation of governing statutes is decided de novo by the appellate court, even though the WCAB's construction is entitled to great weight unless clearly erroneous. (*Boehm & Associates v. Workers' Comp. Appeals Bd.* (1999) 76 Cal.App.4th 513, 515-516 [90 Cal.Rptr.2d 486] (*Boehm*); *Ralphs Grocery Co. v. Workers' Comp. Appeals Bd.* (1995) 38 Cal.App.4th 820, 828 [45 Cal.Rptr.2d 197] (*Ralphs Grocery Co.*).) When interpreting a statute, the Legislature's intent should be determined and given effect. (*Moyer v. Workmen's Comp. Appeals Bd.* (1973) 10 Cal.3d 222, 230 [110 Cal.Rptr. 144, 514 P.2d 1224] (*Moyer*).) The best indicator of legislative intent is the plain meaning of the statutory language, when clear and unambiguous. (*DuBois v. Workers' Comp. Appeals Bd.* (1993) 5 Cal.4th 382, 387-388 [20 Cal.Rptr.2d 523, 853 P.2d 978] (*DuBois*); *Moyer, supra,* 10 Cal.3d at p. 230; *Boehm, supra,* 76 Cal.App.4th at p. 516.) Finally, the statute should be interpreted consistently with its intended purpose, and

harmonized within the statutory framework as a whole. (*DuBois, supra,* 5 Cal.4th at p. 388.)

## II. *Tenet Applies*

The WCJ and WCAB concluded that *Tenet* applies because Dr. Heskiaoff as the primary treating physician discharged Gaytan from doctor-involved care prior to treatment prescribed by Dr. Ainbinder. (*Tenet, supra,* 80 Cal.App.4th at pp. 1046-1048.) These findings are supported by substantial evidence and are not subject to review. (*Western Growers, supra,* 16 Cal.App.4th at p. 233.) In the report of December 6, 2000, Dr. Heskiaoff indicated Gaytan was permanent and stationary and released from further care except for medication due to flare-ups. In addition, Gaytan proceeded under sections 4061 and 4062 in his letter of December 18, 2000, when he objected to Dr. Heskiaoff's conclusions and offered an agreed medical examiner to resolve medical issues.

Gaytan does not dispute *Tenet* applies. On the contrary, Gaytan maintains he complied with sections 4061 and 4062, and *Tenet.* LAUSD, however, alleges that Gaytan manipulated the statutory procedures in order to gain the presumption under section 4062.9.

*Gaytan Complied with Sections 4061 and 4062 and Tenet*

LAUSD argues that Gaytan actually designated Dr. Ainbinder as the primary treating doctor in a letter before the initial examination, and began treatment with Steven Danchik, R.P.T., the day after the examination. If Dr. Ainbinder's designation as a qualified medical evaluator was simply a pretext for changing primary treating physicians and gaining the presumption under section 4062.9, then there was no compliance with sections 4061 and 4062 and *Tenet.* (See *Ordorica v. Workers' Comp. Appeals Bd.* (2001) 87 Cal.App.4th 1037, 1048-1049 [105 Cal.Rptr.2d 123].)

While there is conflicting evidence, the finding that Dr. Ainbinder's initial examination was as a qualified medical evaluator is supported by substantial evidence. (*Western Growers, supra,* 16 Cal.App.4th at p. 233.) Gaytan objected to Dr. Heskiaoff under sections 4061 and 4062, and then gave notice of the qualified medical evaluation and the subsequent change in primary treating physicians based on the qualified medical evaluator's recommendation. In addition, Dr. Ainbinder's medical-legal report of February 14, 2001, refers to a qualified medical evaluation and addresses the issues raised under sections 4061 and 4062.

## III. *Gee Applies*

We first note that *Gee* did not specifically address *Tenet* or California Code of Regulations, title 8, section 9785, subdivision (b). Nevertheless, *Gee*

is consistent. In *Gee*, the injured worker proceeded under sections 4061 and 4062, following discharge by the primary treating physician. In addition, the WCJ resolved the dispute over which physician was the primary treating physician. (*Gee, supra,* 96 Cal.App.4th at pp. 1423, 1428.)

A. *Gee Applies Even Though Gee's Employer Chose a Qualified Medical Evaluator*

In *Gee*, the employer obtained a report by a qualified medical evaluator after the employee changed primary treating physicians. LAUSD, the WCJ and the WCAB distinguish *Gee* because a report from a qualified medical evaluator was not obtained following Gaytan's change to Dr. Ainbinder. This distinction is not determinative. In *Gee* the additional report pertained to whether the presumption under the criteria of section 4062.9 applied to the newly selected primary treating physician that was confirmed by the WCJ. (*Gee, supra,* 96 Cal.App.4th at p. 1427.)

■ Before considering whether the presumption applies to the newly selected primary treating physician under section 4062.9, the court must determine which physician is the primary treating physician pursuant to California Code of Regulations, title 8, section 9785, subdivision (b). Title 8, section 9785, subdivision (b) states in part: "Where the primary treating physician discharges the employee from further treatment and there is a dispute concerning the need for continuing treatment, no other primary treating physician shall be identified unless and until the dispute is resolved." Application of title 8, section 9785, subdivision (b) should be consistent with the plain language and statutory scheme. (*DuBois, supra,* 5 Cal.4th at p. 388; *Moyer, supra,* 10 Cal.3d at p. 230; *Boehm, supra,* 76 Cal.App.4th at p. 516.) Thus, the relevant findings of the discharging primary treating physician must be judged by the court before a newly selected primary treating physician is confirmed. The procedure to follow is set forth by sections 4061, 4062 and 4062.9. (*Tenet, supra,* 80 Cal.App.4th 1041.) Therefore, the WCJ was required to decide between the opinion of Dr. Heskiaoff as the discharging primary treating physician with the presumption and Dr. Ainbinder as Gaytan's qualified medical evaluator, before determining whether the presumption applied to Dr. Ainbinder as the newly selected primary treating physician under the criteria of section 4062.9.

Otherwise, the discharging primary treating physician could lose the presumption by sham characterizations or manipulation as recognized in *Gee*. (*Gee, supra,* 96 Cal.App.4th at pp. 1428-1429.) We also find this interpretation more consistent with the Legislature's intent to promote reliance on treating physicians and reduce medical-legal reporting and costs. (*DuBois, supra,* 5 Cal.4th at p. 388; *Moyer, supra,* 10 Cal.3d at p. 230.)

## B. *The Presumption Was Timely Raised and Not Waived Under Davis*

■ LAUSD contends further that Gaytan failed to raise the presumption under section 4062.9 at trial and thus the issue which includes *Gee* was waived under *Davis*. However, whether Dr. Heskiaoff was the primary treating physician entitled to the presumption was litigated at trial, and clearly included the claim that Dr. Ainbinder was the primary treating physician entitled to the presumption. (See *Gee, supra,* 96 Cal.App.4th at p. 1429.) Moreover, *Gee* holds that the presumption arises when the operative facts are established,[10] and both sides agreed Dr. Heskiaoff is the discharging primary treating physician and Dr. Ainbinder was determined to be the qualified medical evaluator under sections 4061 and 4062 by the WCJ and WCAB.

## C. *Compliance with Sections 4061 and 4062 Does Not Satisfy California Code of Regulations, Title 8, Section 9785*

■ Gaytan contends that his compliance with sections 4061 and 4062 and *Tenet* also satisfied California Code of Regulations, title 8, section 9785, subdivision (b) based on *Gee*. We disagree. As we noted previously, *Gee* did not specifically address *Tenet* or title 8, section 9785. In addition, the WCJ in *Gee* resolved the dispute over which physician was the primary treating physician as if proceeding under title 8, section 9785, subdivision (b), and the Court of Appeal relied on the WCJ's finding. (*Gee, supra,* 96 Cal.App.4th at pp. 1423, 1428.) In any event, it is the court which resolves disputes, and not reporting physicians.

## D. *A Qualified Medical Evaluator Can Be Selected as the Primary Treating Physician*

■ *Gee* does indicate, however, that a qualified medical evaluator can be chosen as the primary treating physician that may be entitled to the presumption under section 4062.9. We find nothing that precludes this conclusion in sections 4061 and 4062, California Code of Regulations, title 8, section 9785, or *Tenet*. In addition, no authority has been cited for reaching the opposite conclusion when the employee is represented.

*Treatment before the decision under California Code of Regulations, title 8, section 9785*

■ Generally, an injured worker is entitled to reasonably change treating physicians under section 4600. (*Ralphs Grocery Co., supra,* 38 Cal.App.4th

---

[10]See *Gee, supra,* 96 Cal.App.4th at pages 1426-1427.

at p. 829.) If Gaytan is ultimately found to need treatment despite the discharge by Dr. Heskiaoff, he was not required to wait until the WCJ decided treatment and a change in primary treating physicians was warranted under *California Code of Regulations*, title 8, section 9785, subdivision (b). To the extent the WCAB's decision indicates the employee must wait until the WCJ favorably resolves the dispute before seeking treatment, we disagree. Otherwise, reasonable and necessary treatment under section 4600 would be significantly delayed or denied pending trial, or possible appeal.

## E. *Remand Is Required to Consider Gee*

■ The WCJ and WCAB in this case concluded that *Gee* was inapplicable. For the reasons stated previously, *Gee* is applicable. We also conclude that the WCJ and WCAB should have considered *Gee* when deciding the issues under sections 4061 and 4062 and California Code of Regulations, title 8, section 9785, subdivision (b). Consideration of *Gee* may have altered the outcome. *Gee* indicates that a qualified medical evaluator can be legitimately selected as the new primary treating physician, whose opinion may be entitled to the presumption if the criteria of section 4062.9 is satisfied. And *Gee* applies even though Gaytan was represented.

## IV. *Due Process Required Consideration of the Entire Record*

## A. *Dr. Heskiaoff Is Entitled to the Presumption Under Section 4062.9*

■ As mentioned previously, under California Code of Regulations, title 8, section 9785, subdivision (b), the WCJ must first decide whether the opinion of the discharging primary treating physician or the opinion of the qualified medical evaluator is correct in order to resolve the issues raised under section 4061 or 4062. At this stage, the opinion of the discharging primary treating physician is still entitled to the presumption under section 4062.9 in resolving the dispute, since an additional comprehensive medical evaluation challenging the opinion was obtained. (§ 4062.9.) Therefore, the WCJ and WCAB were correct in applying the presumption to the opinion of Dr. Heskiaoff.

## B. *The Presumption Was Rebuttable by Medical Evidence*

The presumption that Dr. Heskiaoff's opinion is correct, however, was rebuttable by the opinion of Dr. Ainbinder as Gaytan's qualified medical evaluator. (§ 4062.9.) The WCJ rejected Dr. Ainbinder's opinion, primarily because the February 14, 2001, report was inadmissible. The WCJ indicated this significantly lessened the value of Dr. Ainbinder's opinion and the June

20, 2001, permanent and stationary report, which incorporated the permanent disability described in the inadmissible report.

### C. *Due Process Was Violated by Exclusion of Dr. Ainbinder's Report*

 The WCAB found that the WCJ erred in excluding Dr. Ainbinder's report,[11] but concluded the exclusion was not prejudicial because the WCJ's determination that Dr. Heskiaoff was entitled to the presumption was affirmed. We disagree with this reasoning. Due process requires a meaningful opportunity to present evidence and have it considered in explanation or rebuttal. (*Fidelity & Cas. Co. of New York v. Workers' Comp. Appeals Bd.* (1980) 103 Cal.App.3d 1001, 1015 [163 Cal.Rptr. 339]; *Fremont Indemnity Co. v. Workers' Comp. Appeals Bd.* (1984) 153 Cal.App.3d 965, 971 [200 Cal.Rptr. 762].) While Dr. Heskiaoff's opinion is entitled to the presumption, the February 14, 2001, report is critical to whether Dr. Ainbinder's opinion is credible and substantial evidence that rebutted the presumption under section 4062.9. For example, permanent disability is only described in the inadmissible report. In addition, the nature and extent of permanent disability must be part of the record in order for the WCJ to reasonably conclude Dr. Ainbinder's opinion was not credible because permanent disability remained unchanged after treatment and medical records were reviewed. (*Western Growers, supra,* 16 Cal.App.4th at p. 233; *Bracken, supra,* 214 Cal.App.3d at p. 254.) The WCJ's reasoning and conclusions were crucial to the outcome, because the WCAB essentially adopted the decision and acknowledged that it is the WCJ who resolves the issues raised under sections 4061 and 4062 pursuant to California Code of Regulations, title 8, section 9785, subdivision (b). Thus, due process was violated when the matter was not remanded to the WCJ for consideration of Dr. Ainbinder's February 14, 2001, report, and its effect on the entire record and outcome.

### D. *The Findings Should Be Consistent with the Entire Record*

 Substantial evidence upon which a decision is based is not established by isolating evidence which supports the decision while ignoring other facts which rebut or explain that evidence. (*LeVesque, supra,* 1 Cal.3d 627, 638-639; *Rosas, supra,* 16 Cal.App.4th at p. 1701.) Nor is there substantial evidence if factual findings are contradicted by the record, which is not explained. (*Western Growers, supra,* 16 Cal.App.4th at p. 233; *Bracken, supra,* 214 Cal.App.3d at p. 254.)

The WCJ justified the decision, in part, on the basis that there was no reference in the record to the left ankle prior to Dr. Ainbinder's involvement,

---

[11]See footnote 8, *ante.*

and no objective findings. We note that the first report from Southern California Medical Group indicates that Gaytan had pain and tenderness from the left great toe to the left ankle, and an interim report referred to mild pain in the left ankle with full range of motion and no swelling. In addition, the MRI revealed a sprain of the anterior talofibular ligament as well as a mild degree of fluid in the left ankle joint. Moreover, Dr. Heskiaoff's report of March 21, 2001, indicates that the treatment being received by Gaytan resulted from the industrial injury, some of which apparently was paid by LAUSD. These inconsistencies should be addressed on remand.

### DISPOSITION

The decision of the WCAB is annulled and the matter is remanded for further proceedings consistent with this decision.

Perluss, P. J., and Johnson, J., concurred.