184 Cal.App.4th 860 (2010)
108 Cal.Rptr.3d 917
CARLOS ALVAREZ, Petitioner,
v.
WORKERS' COMPENSATION APPEALS BOARD; STATE COMPENSATION INSURANCE FUND et al., Respondents.
No. B218847.
Court of Appeals of California, Second District, Division Five.
May 14, 2010.
*862 Law Offices of Carl A. Feldman, Carl A. Feldman and Susan Garrett for Petitioner.
Suzanne Ah-Tye, Patricia Brown Hein and David M. Goi for Respondents State Compensation Insurance Fund and Andromeda Entertainment Inc.
No appearance for Respondent Workers' Compensation Appeals Board.

OPINION
MOSK, J.
In a denied workers' compensation claim for death benefits, a panel-qualified medical evaluator (Lab. Code, § 4062.2)[1] requested a copy of certain records in an ex parte telephone conversation with defense counsel. The claimant objected to the ex parte communication and petitioned, inter alia, for a new panel-qualified medical evaluator under section 4062.3, subdivision (f), which prohibits ex parte communications between a party and a panel-qualified medical evaluator and, in the event of a violation, allows the other party to seek a new panel-qualified medical evaluator from another panel. The Workers' Compensation Appeals Board (WCAB) denied the *863 petition, reasoning that the ex parte communication was initiated by the panel-qualified medical evaluator and not a party, and involved administrative and not substantive matters or the merits of the claim.
(1) The claimant petitioned for writ of review, contending that section 4062.3, subdivision (f) explicitly precludes any ex parte communication between a panel-qualified medical evaluator and a party and that the WCAB may not add an exception not contained in the statute. Petitioner also asserted that the failure to enforce the prohibition against the ex parte communications denied him due process of law and was not based on substantial evidence. We hold that section 4062.3 expressly prohibits ex parte communications with a panel-qualified medical evaluator, with the only exception being for communications by the employee or deceased employee's dependent in connection with an examination, and in the event of unauthorized ex parte communication permits the aggrieved party to obtain a new evaluation from another panel-qualified medical evaluator. We therefore annul the WCAB's decision and remand the matter to the WCAB.

FACTUAL AND PROCEDURAL BACKGROUND
Respondent Andromeda Entertainment, Inc., conducted business under the name Galaxy Ballroom. Maria Parades was a waitress for Galaxy Ballroom. She died from intracerebellar hemorrhage and hypertension on September 21, 2005. Carlos Alvarez (Alvarez or petitioner), her widower and guardian at litem of their two minor children, filed a claim for workers' compensation death benefits, alleging that Parades's death was caused by her work. The workers' compensation insurer, State Compensation Insurance Fund (Fund), denied the claim.
Donald Miller, M.D., was selected as a panel-qualified medical evaluator pursuant to section 4062.2.[2] Dr. Miller issued a medical report dated September 20, 2008.
On December 4, 2008, Dr. Miller testified in his deposition that medical records indicated that Parades suffered from stress, severe headaches, and *864 possible initial cerebral bleeding approximately three months before her death, and that one of Parades's sisters had said that a possible source of Parades's stress was the alleged sexual abuse by Alvarez of his daughter that had resulted in a restraining order against Alvarez. Dr. Miller, however, could not specify the medical record or cite the page that contained the sister's statement. Dr. Miller testified that he may have obtained from an "investigative report" or "background report" information that one of Parades's sisters had never heard Parades complain of harassment at work, but apparently Dr. Miller's medical report did not identify any investigative or background report as one of the documents he received or upon which he relied. Dr. Miller said that the report "may be ... put away with all these records there on the side," and that he "would have to go through that whole stack." Dr. Miller could not identify his source of information in the "Review of Medical Records" section of his report, which summarized 635 pages of records sent to him by the defense attorney or insurance company. Dr. Miller said he would be willing to review and clarify the records he had received or relied upon as required by section 4062.3, subdivision (d), including eight pages described only as "miscellaneous records."[3]
On December 5, 2008, Dr. Miller telephoned the attorney for the Fund who had attended Dr. Miller's deposition. Dr. Miller stated that the records could not be located and requested another copy.
In a letter dated the same day, defense counsel wrote opposing counsel that, at the conclusion of Dr. Miller's deposition, the parties and Dr. Miller had agreed that Dr. Miller "would more specifically describe the 635 pages of records he testified he reviewed, as he believed he still had them. However, I just received a brief telephone call from Dr. Miller who stated that the records have not been found and presumably were shredded by his staff after his review." Defense counsel suggested that the records would have to be resent if the parties desired more specificity, and that the adjuster should be contacted directly.
In a letter dated December 9, 2008, counsel for Alvarez responded that defense counsel had "clearly violated the Labor Code by having an ex parte conversation with the Panel QME." Alvarez subsequently filed a petition objecting to the ex parte communication between Dr. Miller and defense counsel. Alvarez requested that Dr. Miller's report be stricken; that a new *865 panel-qualified medical evaluator be selected; and that penalties and sanctions be imposed, including costs and attorney's fees under sections 4062.3 and 5813.[4]
At trial, defense counsel testified that Dr. Miller called on her direct line and advised that his office could not locate some records previously sent. Defense counsel testified further that telephone calls from doctors are not customary, and it took a "couple of beats" to identify the caller. Defense counsel's practice is to terminate an inappropriate call as soon as possible. When defense counsel realized who was calling, she terminated the call as soon as possible. She testified that the call lasted less than one minute. Defense counsel informed Dr. Miller that counsel for Alvarez would be contacted to see how getting another copy of records to the doctor should be handled. Defense counsel said to Dr. Miller that he should not be calling directly. According to defense counsel, Dr. Miller only requested medical documents that Dr. Miller's office could not locate, and there was no discussion about the merits of the case or anything else. Immediately after the call, defense counsel sent a letter to opposing counsel referring to the conversation and stating that as a result, if opposing counsel desired more specificity, the documents would have to be resent to Dr. Miller and that opposing counsel should contact the adjuster.
The workers' compensation administrative law judge (WCJ) issued findings and order that there was no improper ex parte communication between defense counsel and the panel-qualified medical evaluator in violation of section 4062.3. The WCJ also denied Alvarez's petition to strike Dr. Miller's *866 report and request for penalties and sanctions. In his opinion, the WCJ explained that the findings and order were based on the credible and unrebutted testimony of defense counsel.
Alvarez petitioned the WCAB for reconsideration, contending that Dr. Miller's ex parte conversation with defense counsel regarding the records violated the express provisions of section 4062.3. Alvarez contended further that the WCJ exceeded his authority by adding exceptions to the plain language of section 4062.3, which prohibits all ex parte communications with the panel-qualified medical evaluator, unless by the employee or employee's dependent if the employee is deceased, in connection with an examination. Alvarez noted that the new qualified medical evaluator regulations also prohibit all ex parte communications and that a single violation may result in a penalty. (Cal. Code Regs., tit. 8, §§ 35, subd. (b)(1), 41, subd. (b), 60, subd. (b)(7).)
In the report on reconsideration, the WCJ stated that if every ex parte communication with a panel-qualified medical evaluator violated section 4062.3, administrative matters such as scheduling appointments, confirming appearances or receipt of records would require conference calls or correspondences between parties, which would be contrary to meeting statutory deadlines and providing benefits to employees expeditiously. The WCJ explained that ex parte communications are not prohibited or improper when they involve only administrative or procedural matters and not the merits of the case or either side gains an advantage.
The WCAB denied Alvarez's petition for reconsideration and agreed with the WCJ's report that the ex parte communication was initiated by Dr. Miller and concerned an administrative rather than a substantive matter. The WCAB explained that, "The purpose of section 4062.3 is to protect the impartiality of the medical-legal process, and a `party' who initiates communication without prior notice to the opposing party may be perceived by the QME as attempting to influence the process. That did not happen here. (See Carchidi v. Workers' Comp. Appeals Bd. (1998) 63 Cal.Comp.Cases 291 [writ denied].)"[5] The WCAB added that the ex parte communication related back to an administrative matter discussed at the deposition, which was not ex parte. The WCAB also concluded that section 4062.3 is concerned with a party initiating an ex parte communication, which did not occur here.

*867 A. Standard of Review and Statutory Interpretation

(2) We review a decision by the WCAB based on factual findings under the substantial evidence standard of review. (Gaytan v. Workers' Comp. Appeals Bd. (2003) 109 Cal.App.4th 200, 214 [134 Cal.Rptr.2d 516].) "While workers' compensation is liberally construed with the purpose of extending benefits to industrially injured workers (§ 3202; Arriaga v. County of Alameda (1995) 9 Cal.4th 1055, 1065 [40 Cal.Rptr.2d 116, 892 P.2d 150]), an appellate court is not bound to accept factual findings if unreasonable, illogical, arbitrary, improbable, or inequitable considering the entire record and overall statutory scheme." (Gaytan v. Workers' Comp. Appeals Bd., supra, 109 Cal.App.4th at p. 214.) "In contrast, interpretation of governing statutes is decided de novo by the appellate court, even though the WCAB's construction is entitled to great weight unless clearly erroneous. (Boehm & Associates v. Workers' Comp. Appeals Bd. (1999) 76 Cal.App.4th 513, 515-516 [90 Cal.Rptr.2d 486] (Boehm); Ralphs Grocery Co. v. Workers' Comp. Appeals Bd. (1995) 38 Cal.App.4th 820, 828 [45 Cal.Rptr.2d 197] (Ralphs Grocery Co.).) When interpreting a statute, the Legislature's intent should be determined and given effect. (Moyer v. Workmen's Comp. Appeals Bd. (1973) 10 Cal.3d 222, 230 [110 Cal.Rptr. 144, 514 P.2d 1224] (Moyer).) The best indicator of legislative intent is the plain meaning of the statutory language, when clear and unambiguous. (DuBois v. Workers' Comp. Appeals Bd. (1993) 5 Cal.4th 382, 387-388 [20 Cal.Rptr.2d 523, 853 P.2d 978] (DuBois); Moyer, supra, 10 Cal.3d at p. 230; Boehm, supra, 76 Cal.App.4th at p. 516.) Finally, the statute should be interpreted consistently with its intended purpose, and harmonized within the statutory framework as a whole. (DuBois, supra, 5 Cal.4th at p. 388.)" (Gaytan v. Workers' Comp. Appeals Bd., supra, 109 Cal.App.4th at pp. 214-215; see Signature Fruit Co. v. Workers' Comp. Appeals Bd. (2006) 142 Cal.App.4th 790, 800-801 [47 Cal.Rptr.3d 878].)

B. Statutory Language Governs

Section 4062.3, subdivision (e) provides in pertinent part, "All communications with an agreed medical evaluator or a qualified medical evaluator selected from a panel before a medical evaluation shall be in writing and shall be served on the opposing party .... Any subsequent communication with the medical evaluator shall be in writing and shall be served on the opposing party ...." Section 4062.3, subdivision (f) begins by stating, "Ex parte communication with an agreed medical evaluator or a qualified medical evaluator selected from a panel is prohibited."
(3) The statutory language clearly evidences the intent of the Legislature to prohibit unauthorized ex parte communication, whether written or oral, *868 between a party and an agreed or panel-qualified medical evaluator. The regulations pertaining to qualified medical evaluators, although effective February 17, 2009after the event in issue herereflect the prohibition of ex parte communications with a qualified medical evaluator as set forth in section 4062.3,[6] and provide that even a single violation can result in discipline.[7]
(4) Section 4062.3 does not provide that some ex parte communications are permissible, as suggested by the WCJ and WCAB. Although section 4062.3 sets forth detailed procedures by which parties are to disclose information and records to the medical evaluator and provides remedies for violations of those procedures, the statute does not distinguish between ex parte communications on the basis of whether the communication was initiated by a party or by the medical evaluator. To hold that the statute does not proscribe ex parte communications initiated by the medical evaluator would suggest that a party is excused from the proscriptions of section 4062.3 and may discuss the merits of the case with the medical evaluator based solely on the fortuity that the medical evaluator initiated the conversation. To so hold would undermine the statute's purpose.
Section 4062.3 also does not state that ex parte communications are permissible if the subject matter is administrative or procedural rather than *869 substantive or on the merits. The only statutory exception to the proscription against ex parte communications is set forth in section 4062.3, subdivision (h)[8] which concerns communication by the employee or the deceased employee's dependent in the course of or in connection with the examination.
(5) Neither the WCJ nor the WCAB may graft exceptions to a clear statutory prohibition language to accomplish a presumed legislative purpose or intent that does not appear on the face of the statute or from the legislative history. (See Burden v. Snowden (1992) 2 Cal.4th 556, 562 [7 Cal.Rptr.2d 531, 828 P.2d 672]; California Teachers Assn. v. Governing Bd. of Rialto Unified School Dist. (1997) 14 Cal.4th 627, 633 [59 Cal.Rptr.2d 671, 927 P.2d 1175]; California Teachers Assn. v. San Diego Community College Dist. (1981) 28 Cal.3d 692 [170 Cal.Rptr. 817, 621 P.2d 856].) There is nothing in the legislative history of which we are aware that supports the interpretation by the WCJ or WCAB.
When the Legislature has intended to provide an exception to the prohibitions on ex parte communications, it has expressly so stated. For example, as noted, section 4062.3, subdivision (h) states, "Subdivisions (e) and (f) shall not apply to oral or written communications by the employee or, if the employee is deceased, the employee's dependent, in the course of the examination or at the request of the evaluator in connection with the examination." The Legislature has set forth exceptions to prohibitions on ex parte communications in other statutes. Under the Administrative Procedure Act (Gov. Code, § 11340 et seq.), the Legislature provided that ex parte communications otherwise precluded are permissible, inter alia, if "[t]he communication concerns a matter of procedure or practice, including a request for a continuance, that is not in controversy." (Gov. Code, § 11430.20, subd. (b); see Department of Alcoholic Beverage Control v. Alcoholic Beverage Control Appeals Bd. (2006) 40 Cal.4th 1 [50 Cal.Rptr.3d 585, 145 P.3d 462].) Business and Professions Code section 19872, subdivisions (a), (b) and (c), prohibit ex parte communications with the California Gambling Control Commission "upon the merits" of an application. Public Resources Code section 30324 allows ex parte communications with a California Coastal Commission member only if disclosure is made within a specified period. (See also, e.g., Wat. Code, § 8578; Pub. Resources Code, §§ 663.1, 663.2, 30324; Pub. Util. Code, §§ 1701.1, subds. (a), (c)(4), 1701.3, subd. (c).) The California Rules of Professional Conduct prohibit lawyers from having ex parte communications with a judge "upon the merits of a contested matter." (Rules Prof. Conduct, rule 5-300(B).) The California Code of Judicial Ethics provides that *870 a judge "shall not initiate, permit, or consider ex parte communications ... except ... [¶] (d) A judge may initiate ex parte communications, where circumstances require, for scheduling, administrative purposes, or emergencies that do not deal with substantive matters ..." so long as certain conditions are met. (Cal. Code Jud. Ethics, canon 3B(7)(d).) The California Rules of Court, Ethics Standards for Neutral Arbitrators in Contractual Arbitration, promulgated pursuant to Code of Civil Procedure section 1281.85, subdivision (a) provides in standard 14, subdivision (a) that an arbitrator "must not initiate, permit, or consider any ex parte communications," except that "(b) [a]n arbitrator may communicate with a party in the absence of other parties about administrative matters, such as setting the time and place of hearings or making other arrangements for the conduct of the proceedings, as long as the arbitrator reasonably believes that the communication will not result in a procedural or tactical advantage for any party." None of these express exceptions is contained in section 4062.3.
Moreover, California Code of Regulations, title 8, section 10718 prohibits ex parte communications with a "regular physician" (Lab. Code, § 5701) or qualified medical evaluator when the employee is unrepresented (Lab. Code, § 5703.5) "with respect to the merits of the case unless ordered to do so by the Workers' Compensation Appeals Board." This regulation, or a variation of it, has been in effect for a number of years.[9] With this background, the Legislature in section 4062.3 prohibited ex parte communications without limiting the prohibition to communications on the merits. That further suggests that the Legislature did not intend such a limitation in connection with section 4062.3.
The WCJ relied upon Mathew Zaheri Corp. v. New Motor Vehicle Bd. (1997) 55 Cal.App.4th 1305 [64 Cal.Rptr.2d 705], in which the court affirmed a trial court decision denying a writ of mandamus to set aside a New Motor Vehicle Board decision because of an ex parte communication between the franchisor's counsel and the administrative law judges. Counsel for the franchisor had told the administrative law judge that he feared for his safety. The trial court determined that the communication did not violate the terms of the Administrative Procedure Act then in effect and applicable to the Vehicle Code. The court said the ex parte communication was a nonprejudicial breach of legal ethics, but did not constitute a statutory violation, and was not a miscarriage of justice. Here, in contrast, we deal with a violation of an express statutory provision and not just an ethical lapse.
*871 Prejudice, or lack thereof, is not a consideration. Although the violation might seem innocuous, there is no way for the WCAB to determine what exactly was said during the communication or the effect of the communication. (See Department of Alcoholic Beverage Control v. Alcoholic Beverage Control Appeals Bd., supra, 40 Cal.4th at p. 16.) Although we have no basis to believe and do not imply that defense counsel was not truthful in her testimony, it is nevertheless possible that the only sources of information regarding the content of an oral ex parte communicationthose who participated in itwill have an incentive to deny that any impropriety occurred. One can hardly blame an advocate for being skeptical when the only evidence available on an issue is the unverifiable, denial of a statutory violation by his or her adversary. As a result, under the rule proposed by the WCJ and WCAB, the mere act of inquiring into whether the subject of an ex parte communication was substantive or procedural undermines the appearance of impartiality and the legitimacy of the judicial process. It is to avoid such difficulties that section 4062.3 prohibits ex parte communications and mandates that all communications between counsel and the medical evaluator "shall be in writing and shall be served on the opposing party when sent to the medical evaluator." (§ 4062.3, subd. (e), italics added.)
That the panel-qualified medical evaluator felt comfortable with communicating ex parte with counsel for one party about the former's purported sources of information might also be disquieting to the other party. The subject of the records was a sensitive one. Dr. Miller testified about certain statements by or concerning the decedent's family members and attributed them to records. But he could not identify or locate the records upon which he purportedly relied, and that is why he made the ex parte call to the defense counsel. Defense counsel said that if the parties "desire more specificity in the doctor's description of the records he reviewed, we will have to resend them." This seems to suggest that a decision was reached between Dr. Miller and defense counseland to the exclusion of petitioner's counselas to how to proceed with respect to the documents. Even if the communication might appear relatively harmless, we do not know how it might affect petitioner's strategy, if at all. The subtle effects of any ex parte communication may be why the Legislature prohibited unauthorized ex parte communication.
With regard to ex parte communications with a judge or arbitrator, the judge or arbitrator, based on his or her training and experience, would be expected to be able to draw a distinction between purely procedural and scheduling matters on the one hand and matters affecting the merits on the other hand. So it is understandable why the Legislature carved out the exceptions to ex parte communications in that context. But medical evaluators do not have the same background that judges and arbitrators have to draw such distinctions. In a field that is dependent on expert medical *872 opinions, the impartiality and appearance of impartiality of the panel-qualified medical evaluator is critical. Thus, there are justifications for a strict rule prohibiting all ex parte communications in this context.
In view of our conclusion, we do not reach the due process or substantial evidence issues.

DISPOSITION
The ex parte communication between Dr. Miller and defense counsel violated provisions of section 4062.3, subdivisions (e) and (f). Alvarez is entitled to a new panel-qualified medical evaluator. The decision of the WCAB is annulled and the matter is remanded for further proceedings consistent with this opinion. Petitioner is awarded his costs.
Armstrong, Acting P. J., and Ferns, J.,[*] concurred.
NOTES
[1] All further statutory references are to the Labor Code unless otherwise indicated.
[2] Section 4062.2, subdivision (b) states in part: "If either party requests a medical evaluation pursuant to Section 4060, 4061, or 4062, either party may commence the selection process for an agreed medical evaluator .... If no agreement is reached ... either party may request the assignment of a three-member panel of qualified medical evaluators to conduct a comprehensive medical evaluation."

Section 4062.2, subdivision (c) adds in part: "Within 10 days of assignment of the panel by the administrative director, the parties shall confer and attempt to agree upon an agreed medical evaluator selected from the panel. If the parties have not agreed ... each party may then strike one name from the panel. The remaining qualified medical evaluator shall serve as the medical evaluator."
[3] Section 4062.3, subdivision (d) provides: "In any formal medical evaluation, the agreed or qualified medical evaluator shall identify the following: [¶] (1) All information received from the parties. [¶] (2) All information reviewed in preparation of the report. [¶] (3) All information relied upon in the formulation of his or her opinion."
[4] Section 4062.3 provides in part: "(e) All communications with an agreed medical evaluator or a qualified medical evaluator selected from a panel before a medical evaluation shall be in writing and shall be served on the opposing party 20 days in advance of the evaluation. Any subsequent communication with the medical evaluator shall be in writing and shall be served on the opposing party when sent to the medical evaluator. [¶] (f) Ex parte communication with an agreed medical evaluator or a qualified medical evaluator selected from a panel is prohibited. If a party communicates with the agreed medical evaluator or the qualified medical evaluator in violation of subdivision (e), the aggrieved party may elect to terminate the medical evaluation and seek a new evaluation from another qualified medical evaluator to be selected according to Section 4062.1 or 4062.2, as applicable, or proceed with the initial evaluation. [¶] (g) The party making the communication prohibited by this section shall be subject to being charged with contempt before the appeals board and shall be liable for the costs incurred by the aggrieved party as a result of the prohibited communication, including the cost of the medical evaluation, additional discovery costs, and attorney's fees for related discovery."

Section 5813, subdivision (a), provides: "(a) The workers' compensation referee or appeals board may order a party, the party's attorney, or both, to pay any reasonable expenses, including attorney's fees and costs, incurred by another party as a result of bad-faith actions or tactics that are frivolous or solely intended to cause unnecessary delay. In addition, a workers' compensation referee or the appeals board, in its sole discretion, may order additional sanctions not to exceed two thousand five hundred dollars ($2,500) to be transmitted to the General Fund."
[5] In Carchidi v. Workers' Comp. Appeals Bd., supra, 63 Cal.Comp.Cases 291, the WCAB determined that an agreed medical evaluator's report was admissible to determine that the employee's injury did not arise out of or in the course of employment when a job analysis was sent by the defendant ex parte to the medical evaluator with no intent to influence the physician's opinion, the medical report was not admitted to determine qualified injured worker status, and the employee did not attempt to end the evaluation for months after receiving the report.
[6] California Code of Regulations, title 8, section 41, subdivision (b) provides: "Evaluators selected from a QME panel provided by the Administrative Director shall not engage in ex parte communication in violation of Labor Code section 4062.3."

California Code of Regulations, title 8, section 35, subdivision (b)(1) provides: "All communications by the parties with the evaluator shall be in writing and sent simultaneously to the opposing party when sent to the medical evaluator, except as otherwise provided in subdivisions (c), (k) and (l) of this section."
California Code of Regulations, title 8, section 35, subdivision (k) provides: "The Appeals Board shall retain jurisdiction in all cases to determine disputes arising from objections and whether ex parte contact in violation of Labor Code section 4062.3 or this section of Title 8 of the California Code of Regulations has occurred. If any party communicates with an evaluator in violation of Labor Code section 4062.3, the Medical Director shall provide the aggrieved party with a new panel in which to select a new QME or the aggrieved party may elect to proceed with the original evaluator. Oral or written communications by the employee, or if the employee is deceased by the employee's dependent, made in the course of the examination or made at the request of the evaluator in connection with the examination shall not provide grounds for a new evaluator unless the Appeals Board has made a specific finding of an impermissible ex parte communication."
[7] California Code of Regulations, title 8, section 60, subdivision (b) provides in part: "The Administrative Director may, based on a complaint by the Medical Director, and following a hearing pursuant to section 61 of Title 8 of the California Code of Regulations, suspend, terminate or place on probation a QME found in violation of a statutory or administrative duty as described in the Administrative Director Sanction Guidelines for QMEs under section 65 of Title 8 of the California Code of Regulations. Such violations include, but are not limited to: [¶] ... [¶] (7) one finding by the Appeals Board of ex parte contact by the QME prohibited by Labor Code section 4062.3."
[8] Section 4062.3, subdivision (h) states: "Subdivisions (e) and (f) shall not apply to oral or written communications by the employee or, if the employee is deceased, the employee's dependent, in the course of the examination or at the request of the evaluator in connection with the examination."
[9] See, e.g., Cal. Code of Regs., former title 8, section 10718 (1981); Boardman v. Industrial Acc. Com. (1956) 140 Cal.App.2d 273, 275-277 [295 P.2d 465] (Regulation in effect then had no limitation for the merits for ex parte communications.).
[*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.