Opinion
 

 BLEASE, Acting P. J.
 

 This is an appeal from a judgment denying a petition for a writ of administrative mandamus under Code of Civil Procedure section 1094.5 and Vehicle Code section 3068.
 

 Mathew Zaherí Corporation and Mathew Zaherí (Zaherí) contend the trial court erred in ruling that undisclosed ex parte communication between opposing counsel and administrative law judges did not deprive Zaherí of a fair trial.
 

 
 *1310
 
 We will affirm the judgment, concluding that the trial court properly examined the circumstances for prejudice and did not abuse its discretion in determining that the trial was fair.
 
 [1]
 

 Facts and Procedural Background
 

 Zaherí is a new motor vehicle dealer franchised to sell Mitsubishi vehicles in Hayward. On February 3, 1992, Zaherí tendered a protest to the New Motor Vehicle Board (Board), under Vehicle Code sections 3050 and 3065, claiming that, after an audit, franchisor Mitsubishi Motor Sales of America, Inc. (Mitsubishi) had unfairly charged back $137,444.79 in warranty service claims it had paid Zaherí.
 

 A hearing was conducted by Douglas Drake, an administrative law judge (ALJ) for the Board. He prepared a written opinion which was adopted by the Board. The opinion concludes that part of the charge back, $57,054.68, was unfair because it was predicated upon Zaherí’s failure to obtain prior written authorization for services in cases in which Mitsubishi’s warranty policy and procedures manual had been modified to permit postrepair written authorization. Notwithstanding, the opinion concludes that Mitsubishi was entitled to a full offset of the charge back because it proved that the Zaherí dealership had submitted fraudulent warranty claims totaling more than that amount.
 

 Zaherí then filed a petition seeking to overturn the Board’s decision on grounds the evidence does not support the offset granted Mitsubishi and that he was deprived of a fair hearing because of ex parte contacts between counsel for Mitsubishi and key representatives of the Board.
 

 The claim of ex parte communications was tried to the court on depositions, declarations, and documentary evidence. The court issued a written opinion which explained its reasons for denying the petition. The written opinion and uncontroverted evidence pertaining to the ex parte communications claim disclose the following.
 

 Sam Jennings is the chief ALJ and the executive secretary for the Board. As the chief ALJ he assigns matters to be heard by the Board’s ALJ’s. At Zaherí’s request we take judicial notice that the job description for chief ALJ includes as one duty the direction and supervision of other ALJ’s. ALJ Jennings presided over a settlement conference in the Zaherí protest proceeding.
 

 
 *1311
 
 At some point during discovery prior to the protest hearing, Elizabeth Grimes, one of two attorneys representing Mitsubishi, telephoned ALJ Jennings to complain that Zaherí attempted to intimidate or threaten prospective witnesses by telling them that he would fire them or sue them if they cooperated with Mitsubishi. Jennings responded that the complaint would have to be tendered by way of a noticed motion.
 

 While the Zaherí protest was being heard by ALJ Drake, Robert Mackey, Mitsubishi’s other attorney, asked to speak to ALJ Jennings. Mackey told Jennings that Mathew Zaherí had been crying and sobbing during the testimony of a witness, that Mackey believed this boded well for possible settlement, and that Mackey was very concerned for the safety of himself and Grimes.
 

 ALJ Jennings spoke to ALJ Drake. He asked Drake if he had noticed any change in the environment of the hearing and whether he had seen Mathew Zaherí crying or sobbing uncontrollably. Drake said he had not seen Mathew Zaherí crying or sobbing but that Mathew Zaherí was acting irrationally or illogically. Jennings told Drake that Mackey was concerned for the safety of Grimes and himself.
 
 [2]
 
 Drake then told Jennings that he would not proceed with the protest hearing without security. Jennings told Drake he would arrange for a state police officer to be present in the hearing room. Jennings then arranged for the attendance of a state police officer at the hearing.
 
 [3]
 

 Jennings told counsel for Zaherí, during the pendency of the hearing on the Zaherí protest, that Mackey had spoken to him and informed him that Mathew Zaherí had been sobbing uncontrollably in the hearing room and that Mackey believed there might now be an opportunity to settle the matter. However, Zaherí’s counsel was not informed that Mackey told Jennings he feared for the safety of Mitsubishi’s counsel or that Jennings related that to ALJ Drake, which was the cause of the attendance of the state police officer.
 

 The trial court reasoned that Zaherí’s claim was analogous to a claim that the tribunal was biased. Relying on California Administrative Mandamus (Cont.Ed.Bar 1989) sections 2.13-2.14, pages 41-42 the court concluded that
 
 *1312
 
 the standard for review of the Board’s decision was whether the improper ex parte communications resulted in actual bias or a strong likelihood of such bias. It found that the standard was not satisfied by the evidence.
 

 Zaherí appeals from the ensuing judgment.
 

 Discussion
 

 I
 

 Zaherí contends the trial court erred in failing to overturn the Board’s decision based upon improper ex parte communication, Zaherí claims that, under the trial court’s findings: (1) Mitsubishi secretly provided the Board with evidence that Mathew Zaherí made threats and the Board acted upon it, (2) in violation of Government Code section 11513 and (3) Zaheri’s constitutional right to due process of law. Mitsubishi replies that: (1) the trial court did not find that the ex parte communications included the assertion that Mathew Zaherí made threats, (2) there was nothing improper about the ex parte communications, hence no violation of the statutory or constitutional law, and, if the communication was improper, (3) Zaherí did not show that the Board’s decisionmaking process was “irrevocably tainted,” the showing he must make to overturn the decision.
 
 [4]
 

 We will reach the following conclusions. Under the trial court’s findings Mitsubishi’s counsel did not tell ALJ Jennings that Mathew Zaherí made threats. The ex parte communication of Mackey’s fear for his safety was improper, as was the failure to disclose this communication. However, the impropriety does not warrant a rehearing of Zaheri’s protest.
 

 A.
 

 Mitsubishi is essentially correct concerning the findings. The trial court did not find that Mackey told ALJ Jennings that Mathew Zaherí had threatened counsel.
 

 We apply the following standards to review the facts. First, we apply the substantial evidence rule and defer to the trier of fact where the inferences are conflicting. (See, e.g., 9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 288, p. 300.) Applying this rule we accept as true the actual and unambiguous determinations of fact in the trial court’s opinion, notwithstanding the absence of a statement of decision. (See, e.g.,
 
 id,.,
 
 § 264, pp. 271-272; cf., e.g.,
 
 People
 
 v.
 
 Butcher
 
 (1986) 185 Cal.App.3d 929, 936-937 [229 Cal.Rptr. 910].)
 

 
 *1313
 
 Second, we presume that the judgment is correct. As to factual matters not actually and unequivocally determined in the opinion of the trial court, we imply any necessary findings in support of the judgment which are supported by the evidence. (See, e.g., 9 Witkin, Cal. Procedure,
 
 supra,
 
 § 268, pp. 276-277.)
 

 The trial court found that Mackey told ALJ Jennings that he feared for the safety of himself and his cocounsel. This is not the same as asserting that Mathew Zaherí “made a threat”; in ordinary usage “to make a threat” is to make a threatening “statement” (see Evid. Code, § 225). In context, Mackey said no more than that he felt threatened by Mathew Zaherí’s alleged behavior, his uncontrolled crying or sobbing in a public hearing, i.e., that Zaherí “presented” a potential threat because he was unable to maintain his composure under the stress of trial adversity. Notably, this has a lesser propensity to impugn Mathew Zaherí’s veracity than the assertion that is the emotive linchpin of Zaherí’s arguments, i.e., that he “made a threat.”
 

 B.
 

 That brings us to the argument that the ex parte communication with the ALJ’s that did occur violates the statutory and constitutional law.
 

 1.
 

 Zaherí argues that the ex parte communication violates Government Code section 11513.
 

 Government Code section 11513 applies to the protest hearing by virtue of Vehicle Code section 3066. Vehicle Code section 3066 provides: “The board, or a hearing officer designated by the board, shall hear and consider the oral and documented evidence introduced by the parties and other interested individuals and groups, and the board shall make its decision solely on the record so made. Sections 11507.6, 11507.7, except subdivision (c), 11510, 11511, 11513, 11514, 11515, and 11517 of the Government Code apply to these proceedings.”
 

 This limits the evidence to the admissible evidence introduced in the protest hearing. As best we can make out, Zaherí’s argument is that the information ALJ Drake received—Mackey’s opinion that Mathew Zaherí presented a potential threat to opposing counsel—e.g., was “received as evidence,” in derogation of the requirements of Government Code section 11513.
 

 
 *1314
 
 The necessary premise of this argument is that the Board (i.e., ALJ Drake) relied upon this information for the purpose of making its findings. (See generally, Annot., Administrative Decision or Finding Based on Evidence Secured Outside of Hearing, and Without Presence of Interested Party or Counsel (1951) 18 A.L.R.2d 552.) This is implicit in Zaherí’s rhetoric: “The Board’s reliance on evidence received in secret, which appellants were given no opportunity to rebut, constitutes a failure to proceed as required by law.”
 

 However, the ex parte communication can be characterized as “evidence” within the ambit of section 11513 only if the information was considered by ALJ Drake for its bearing on the issues resolved by the findings in his proposed decision. If the information was not so considered, it is not “evidence . . . taken” or “evidence . . . admitted,” nor can Mackey be characterized as an “opposing witness.” (See Evid. Code, § 140; Code Civ. Proc., § 1878.)
 

 The trial court did not find that Drake considered the information for that illicit purpose,
 
 [5]
 
 nor was such a finding compelled by the evidence adduced at trial.
 

 Zaherí submits that since Drake was made aware of Mackey’s concern for his safety and told ALJ Jennings that he would not proceed without security, the information “inevitably colored his view of Mr. Zaherí and his integrity.” We reject the assertion of inevitability. Litigation can engender great emotional stress regardless whether a litigant is as pure as the driven snow. An ALJ, having personally observed that a litigant is acting irrationally, may decide that the presence of a police officer is a prudent safeguard without drawing any adverse conclusions concerning the veracity of the litigant. The same is true if the impetus is increased by an expression of concern by an opposing counsel. Accordingly, Zaherí’s claim that the ex parte communication resulted in a violation of section 11513 is not meritorious.
 

 2.
 

 The only other pertinent subconstitutional “law” (Code Civ. Proc., § 1895) is the law of legal ethics, potentially applicable under the rubric of misconduct of the tribunal or of counsel. Misconduct of court or counsel is a potential ground of reversal in a civil action, and can be a ground for overturning an administrative adjudication for denial of a fair hearing.
 

 
 *1315
 
 As appears, the ex parte communication in this case did violate the law of legal ethics. However, to warrant reversal such misconduct must be shown to be prejudicial as a miscarriage of justice or as intentional and sufficiently heinous to warrant reversal as a punishment or because it shows bias on the part of the tribunal. (See 9 Witkin, Cal. Procedure,
 
 supra,
 
 §§ 340, 348, and 360, pp. 346, 351, 363-364.) No such finding is compelled on this record.
 

 In aid of its due process argument Zaherí points to various legal standards proscribing ex parte communications in particular contexts. For the most part these standards are not directly applicable to this setting, e.g., Zaherí points to canon 3(B)(7) of the California Code of Judicial Ethics,
 
 [6]
 
 and, by way of analogy, federal law and inchoate amendments to the California Administrative Procedure Act (APA) (Gov. Code, § 11340 et seq.), Government Code sections 11430.10 and 11430.70, which do not become operative until July 1997.
 
 [7]
 

 
 *1316
 
 Zaherí suggests that rule 5-300(B) of the Rules of Professional Conduct
 
 [8]
 
 is directly applicable and was violated by the ex parte communication in this case.
 

 Zaherí notes that Formal Opinion No. 1984-82 of the State Bar Committee on Professional Responsibility and Conduct (1 Cal. Compendium on Prof. Responsibility, pt. II A) (hereafter opinion 84-82), concludes that an ALJ is a “judicial officer” under the Rules of Professional Conduct, former rule 7-108, the predecessor of rule 5-300(B) which contains substantially identical text. However that conclusion is incorrect.
 

 Opinion 84-82 goes awry in asserting that Rules of Professional Conduct, former rule 7-108 is derived from the American Bar Association (ABA) Model Code of Professional Responsibility, disciplinary rule 7-110(B). Rather, the ABA rule is derived from the California rule. (See ABA proposed Code Prof. Responsibility (final draft July 1, 1969) DR 7-110(B), fn. 92, p. 105.) Former rule 7-108 carries forward the language of former rule 16 of our original rules of professional conduct adopted in 1928. (204 Cal. xciii-xciv.)
 

 The rule was adopted long before the burgeoning of our present system of administrative adjudication and the associated developments in the law and legal usage. (See generally, Kleps,
 
 Certiorarified Mandamus: Court Review of California Administrative Decisions
 
 1939-49 (1950) 2 Stan.L.Rev. 285.) When Rules of Professional Conduct former rule 16 was adopted “judicial officer” had a settled meaning; it referred to persons who exercised judicial power under the tripartite division of state government. The usage was frequently employed to
 
 distinguish
 
 between the proper function of the (administrative) officials in the executive branch and those in the judicial branch. (See, e.g.,
 
 People
 
 v.
 
 Provines
 
 (1868) 34 Cal. 520, 534;
 
 People
 
 v.
 
 Bird
 
 (1931) 212 Cal. 632, 641 [300 P. 23]; former Code Civ. Proc., § 282; Code Civ. Proc., § 1211.)
 

 Thus an ALJ is not within the compass of the term “judicial official” as used in Rules of Professional Conduct, former rule 16. (See, e.g., 2A
 
 *1317
 
 Sutherland, Statutory Construction (5th ed. 1992) § 47.30, p. 262.) Nor did the term change its meaning when it was simply carried forward in subsequent regulations. (Cf., e.g.,
 
 Estate of Childs
 
 (1941) 18 Cal.2d 237, 242-243 [115 P.2d 432, 136 A.L.R. 333].)
 

 Nonetheless, the law of legal ethics is not limited to written law; it partakes of a common law or “unwritten law” (Code Civ. Proc., § 1899) aspect. (See, e.g., rule 1-100(A), Rules Prof. Conduct.)
 
 [9]
 
 There is no principled basis to distinguish between an ALJ and a judge in the judicial branch for purposes of the ethical strictures against ex parte contacts. Hence, we find the same standard applicable. (See generally, e.g., rule 5-300(B), Rules Prof. Conduct; canon 3(B)(7) of the Cal. Code Jud. Ethics; Gov. Code, § 11513.5, fn. 7,
 
 ante.)
 

 Mitsubishi does not disagree. It notes that the general standard for improper ex parte communication is limited to communications about “issue[s] in the proceeding” and argues that the communication here did not transgress that standard.
 

 The basic standard is stated several different ways, e.g., “regarding any issue in the proceeding,” “upon the merits of a contested matter,” “concerning a pending or impending proceeding.” We do not assign significance to the varying terminology. “It is, in essence, a rule of fairness meant to insure that all interested sides will be heard on an issue.”
 
 (Heavey
 
 v.
 
 State Bar
 
 (1976) 17 Cal.3d 553, 559 [131 Cal.Rptr. 406, 551 P.2d 1238].) It extends to communication of information in which counsel knows or should know the opponents would be interested. (See
 
 ibid.)
 
 Construed in aid of its purpose, we conclude the standard generally bars any ex parte communication by counsel to the decisionmaker of information relevant to issues in the adjudication.
 

 There are exceptions to the general standard, where other interests supervene. The only overt claim of exception advanced here is for communications properly made in the context of settlement proceedings. That exception could justify part of the communication between Mackey and ALJ Jennings. However, there is no showing how the information that Mackey feared for his safety and that of Grimes was germane to settlement.
 

 There are circumstances in which a concern about personal safety could warrant ex parte communication with the tribunal. If immediate open disclosure would compromise the safety of the participants, e.g., if counsel
 
 *1318
 
 believed that an opposing party was unlawfully carrying a concealed weapon, counsel could communicate that information to the tribunal. However, there was no such an emergency in this case. Moreover, no reason appears why the communication should not be fully disclosed to the opponent after the immediacy of the perceived danger abates. (See Cal. Code Jud. Ethics, canon 3(B)(7)(d), fn. 6,
 
 ante.)
 

 We conclude that the undisclosed communication of this information to ALJ Drake constituted misconduct on the part of Mackey
 
 [10]
 
 or of the ALJ’s, e.g., in failing to promptly disclose the substance of the ex parte communication and to allow Zaherí an opportunity to respond. Nonetheless, this does not compel reversal of the Board’s decision. As related, to warrant reversal such misconduct must be shown prejudicial or intentional and heinous.
 

 “Prejudice” connotes that the Board’s decision stemmed, at least in part, from the asserted misconduct.
 
 [11]
 
 (See, e.g.,
 
 Sabella Southern Pac. Co., supra,
 
 70 Cal.2d at pp. 317-318.) As explained previously, that conclusion is not compelled on this record. Nor was the trial court compelled to find that the misconduct was “actual misconduct,” i.e., known to be in violation of the law of legal ethics.
 
 [12]
 
 In keeping with the ordinary rule, we defer to the predominantly fact-based decisions of the trial court. (See, e.g.,
 
 People
 
 v.
 
 Louis
 
 (1986) 42 Cal.3d 969, 984-988 [232 Cal.Rptr. 110, 728 P.2d 180]; cf.
 
 Moran
 
 v.
 
 Board of Med. Examiners
 
 (1948) 32 Cal.2d 301, 309 [196 P.2d 20].)
 

 Accordingly, there is no warrant in the subconstitutional law for reversal of the trial court on appeal.
 

 3.
 

 Zaherí next contends the trial court erred in failing to overturn the Board’s decision for violation of Zaherí’s constitutional right to due process
 
 *1319
 
 of law. As appears, no such violation was made out and the contention of error is not meritorious.
 

 Zaherí argues that any ex parte “receipt of evidence” violates due process. Like Zaherí’s argument concerning violation of Government Code section 11513, the argument rests upon the implied premise that the Board
 
 used
 
 the illicit information in reaching its decision on the protest.
 
 [13]
 
 For the reasons that we have already given, this premise is untenable on this appeal.
 

 When an administrative adjudicator uses “evidence” outside the record there is a denial of a fair hearing because, as to that “evidence,” there has been no hearing at all, for the disadvantaged party has not been heard. (See, e.g.,
 
 English
 
 v.
 
 City of Long Beach
 
 (1950) 35 Cal.2d 155, 158-159 [217 P.2d 22, 18 A.L.R.2d 547].) If a trial-type hearing is required by due process of law (see 2 Davis & Pierce, Administrative Law Treatise (3d ed. 1994) § 9.5, pp. 43-61), its deprivation a fortiori violates the due process precept.
 

 The prohibitions against improper ex parte communications are measures imposed to avert this kind of due process violation. They also aid in preserving the due process requirement of an unbiased tribunal and the related public interest in avoiding the appearance of bias on the part of public decisionmakers. Zaherí does not identify any case law which holds that the violation of such a prohibition is itself a violation of the constitutional due process precept.
 
 [14]
 
 We discern no persuasive reason to characterize an ex parte communication of the kind that occurred here as presenting such a due process violation.
 

 If the trial court appropriately concludes that the agency did not rely upon the information provided in the ex parte communication, and that the
 
 *1320
 
 decisionmaker was not guilty of actual misconduct giving rise to a presumption of bias, there is no deprivation of a fair hearing and no denial of due process.
 
 [15]
 

 II, III
 
 *
 

 Disposition
 

 The judgment is affirmed.
 

 Sparks, J., and Callahan, J., concurred.
 

 A petition for a rehearing was denied July 15, 1997, and appellants’ petition for review by the Supreme Court was denied September 17, 1997.
 

 [1]
 

 The Reporter of Decisions is directed to publish the opinion except for parts II. and III. of the Discussion.
 

 [2]
 

 The most disturbing aspect of this case is the trial court’s rejection of the sworn assertions of ALJ Jennings, and to a lesser degree ALJ Drake and Mackey. They testified that they heard or said nothing about Mackey’s fear for his and Grimes’s personal safety. The trial court rejected this account based on evidence which we do not recount. We conclude that this matter is not material to the disposition of this appeal. The trial court could attribute these discrepancies to forgetfulness or even lies without contradicting its core conclusions in the matter. The trial court was not sitting as a disciplinary body. (See, e.g„
 
 Sabella
 
 v.
 
 Southern Pac. Co.
 
 (1969) 70 Cal.2d 311, 321 [74 Cal.Rptr. 534, 449 P.2d 750].)
 

 [3]
 

 The form Jennings signed to request the state police coverage gives as the reason for service: “Hearing—Threats on administrative law judge.”
 

 [4]
 

 The Board joins in Mitsubishi’s brief.
 

 [5]
 

 Zaherí did not tender this statutory argument in the trial court. Therefore it is unremarkable that the trial court did not address it in its opinion.
 

 [6]
 

 Canon 3(B)(7), applicable to “members of the judiciary” (Cal. Code Jud. Ethics, preamble), in pertinent part, is as follows:
 

 “A judge shall accord to every person who has a legal interest in a proceeding, or that person’s lawyer, full right to be heard according to law. A judge shall not initiate, permit, or consider ex parte communications, or consider other communications made to the judge outside the presence of the parties concerning a pending or impending proceeding, except as follows:
 

 “(c) A judge may, with the consent of the parties, confer separately with the parties and their lawyers in an effort to mediate or settle matters pending before the judge.
 

 “(d) A judge may initiate ex parte communications, where circumstances require, for scheduling, administrative purposes, or emergencies that do not deal with substantive matters provided:
 

 “(i) the judge reasonably believes that no party will gain a procedural or tactical advantage as a result of the ex parte communication, and
 

 “(ii) the judge makes provision promptly to notify all other parties of the substance of the ex parte communication and allows an opportunity to respond.
 

 “(e) A judge may initiate or consider any ex parte communication when expressly authorized by law to do so.” (Cal. Code Jud. Ethics, canon 3(8)(7) [23 West’s Cal. Codes Ann. Rules (Appen.) pt. 2 (1996 ed.) p. 714].)
 

 [7]
 

 Mitsubishi suggests that these APA standards are inapplicable both because of their future operative date and because of their absence from the list of applicable APA statutes in Vehicle Code section 3066, page 1313,
 
 ante.
 

 Neither party cites Government Code section 11513.5, the statute which presently addresses the subject of ex parte communications in proceedings governed by the APA. It too is absent from the list in Vehicle Code section 3066. In pertinent part, it is as follows: “Except as required for the disposition of ex parte matters specifically authorized by statute, a presiding officer serving in an adjudicative proceeding may not communicate, directly or indirectly, upon the merits of a contested matter while the proceeding is pending, with any party, including employees of the agency that filed the accusation, with any person who has a direct or indirect interest in the outcome of the proceeding, or with any person who presided at a previous stage of the proceeding, without notice and opportunity for all parties to participate in the communication.”
 

 [8]
 

 Rule 5-300(B) is as follows:
 

 “(B) A member shall not directly or indirectly communicate with or argue to a judge or judicial officer upon the merits of a contested matter pending before such judge or judicial officer, except:
 

 “(1) In open court; or
 

 “(2) With the consent of all other counsel in such matter; or
 

 “(3) In the presence of all other counsel in such matter; or
 

 “(4) In writing with a copy thereof furnished to such other counsel; or
 

 “(5) In ex parte matters.”
 

 [9]
 

 Rule 1-100(A) in pertinent part provides: : “The prohibition of certain conduct in these rules is not exclusive. . . . Although not binding, opinions of ethics committees in California should be consulted by members for guidance on proper professional conduct. Ethics opinions and rules and standards promulgated by other jurisdictions and bar associations may also be considered.”
 

 [10]
 

 Misconduct of counsel need not be intentional, i.e., an act performed with the knowledge that it is wrongful, prohibited by the law of legal ethics. (See, e.g.,
 
 People
 
 v.
 
 Bolton
 
 (1979) 23 Cal.3d 208, 213-214 [152 Cal.Rptr. 141, 589 P.2d 396].) However, the term “misconduct” suggests that the conduct must at least be negligent in light of some legal duty of care.
 

 [11]
 

 Alternatively, one might use the test of
 
 People
 
 v.
 
 Watson
 
 (1956) 46 Cal.2d 818, 836 [299 P.2d 243] [after an examination of the entire cause, including the evidence, it is reasonably probable that a result more favorable to defendant would have been reached in the absence of the misconduct],
 

 [12]
 

 If the trial court had found that ALJ Drake knew that the communication was improper and that he was obliged to disclose its substance to Zaherí, this would have afforded a strong presumption of prejudice on the ground of “actual bias.” (See generally,
 
 People
 
 v.
 
 Cooper
 
 (1991) 53 Cal.3d 771, 835 [281 Cal.Rptr. 90, 809 P.2d 865].)
 

 [13]
 

 Zaheri also argues that there was a due process violation because the Board used the information in deciding to station a state police officer in the hearing room. He relies upon
 
 Gibson
 
 v.
 
 Superior Court
 
 (1982) 135 Cal.App.3d 774 [185 Cal.Rptr. 741].
 
 Gibson
 
 is inapposite. In that case, arising on a writ petition, the question was whether the court could impose highly intrusive and dramatic security measures based upon ex parte information without affording the defendants a requested hearing. “Here, the deprivatory action is the creation of a courtroom environment which will distinguish petitioners’ trial from those of other defendants and possibly deter some members of the public from attending.”
 
 (Id.
 
 at p. 781.) The stationing of a single police officer on standby in an administrative hearing room presents no deterrence to public attendance and no analogous “deprivation.”
 

 [14]
 

 The closest approach to such a holding is in
 
 Sangamon Valley Television Corp.
 
 v.
 
 United States
 
 (D.C. Cir. 1959) 269 F.2d 221 [106 App.D.C. 30]. There an interested party conveyed ex parte information to the tribunal, “[i]ts importance was great and perhaps critical,” to the disposition of the merits.
 
 (Id.
 
 at p. 224.) The circuit court observed that “basic fairness requires such a proceeding to be carried on in the open.”
 
 (Ibid.)
 

 Sangamon Valley
 
 is not analogous to this case. The information was conveyed there for the purpose of influencing the disposition of the merits and in prejudicial violation of the agency’s own rules forbidding any communication on the merits after the record was closed. (269 F.2d at pp. 224-225.)
 

 [15]
 

 Accordingly, we need not address the interesting question of the standard of harmless error for a constitutional due process violation in a civil case. (See generally, e.g.,
 
 In re La Croix
 
 (1974) 12 Cal.3d 146, 154 [115 Cal.Rptr. 344, 524 P.2d 816];
 
 United States
 
 v.
 
 Valle-Valdez
 
 (9th Cir. 1977) 554 F.2d 911, 915-916, especially fn. 7;
 
 Nizam-Aldine
 
 v.
 
 City of Oakland
 
 (1996) 47 Cal.App.4th 364, 379 [54 Cal.Rptr.2d 781].)
 

 *
 

 See footnote 1,
 
 ante,
 
 page 1310.