Filed 5/16/18; Certified for Publication 6/4/18 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| In re the Marriage of PHILLIP and RACHELLE SPECTOR. | C084628 |
| PHILLIP SPECTOR, | (Super. Ct. No. STAFLDWOC20160001460) |
| Respondent, | |
| v. | |
| RACHELLE SPECTOR, | |
| Appellant. | |

Petitioner Phillip Spector (husband) filed for dissolution of his marriage to respondent Rachelle Spector (wife). The primary issue on appeal is whether the trial court's inherent authority to reconsider its own orders as explained in *Le Francois v. Goel* (2005) 35 Cal.4th 1094 permitted the court to sua sponte modify the terms of the temporary spousal support order retroactively under the circumstances presented. Wife

1

argues the trial court was precluded from doing so pursuant to Family Code[1] sections 3603, 3651, subdivision (c), and 3653, subdivision (a), and the various cases interpreting those statutes. We conclude the court had inherent authority to reconsider its prior order and to apply its modified decision retroactively. Finding no merit in wife's argument that the court violated her due process rights when it exercised this authority, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND

The facts are generally undisputed.[2] On September 9, 2016, wife filed a request for a temporary order for spousal support and professional fees. The parties filed their respective briefs with supporting declarations and evidence in advance of the February 17, 2017, hearing. The court issued its ruling on February 21, 2017 (2-21 Order) and served the order on the parties via e-mail the next day. The court ordered, among other things, husband to pay wife temporary spousal support and certain professional fees. The first temporary spousal support payment was due on March 1, 2017. The 2-21 Order states "[t]hese Orders shall remain in full force and effect until they are modified pursuant to a written agreement between the parties or further court Order."

Shortly after receiving the 2-21 Order on February 22, 2017, husband sent an e-mail to the judge with a copy to wife, stating "there appears to be an error in your arithmetic" regarding the monthly temporary spousal support figure. (Bolding omitted.) Husband, wife, and the judge engaged in several e-mail exchanges regarding the calculations and the effect of the monetary awards and requirements in the 2-21 Order. Husband suggested "that the court relabel it's [sic] ruling to instead be a Tentative Ruling and let us each argue before making it final." On February 23, 2017, the judge responded, "[q]uite frankly I have the authority to modify the orders and am considering

---

[1]    All further section references are to the Family Code unless otherwise stated.

[2]    The disputed facts are not discussed because they are immaterial to resolution of the case.

2

doing so." She further stated "[w]e can call the notice and orders tentative," and invited the parties to argue the issues but indicated she "prefer[red] a 5 page written argument from each of [them]."

Husband responded that a five-page written argument was fine with him. Wife responded: (1) objecting to the use of e-mails for argument on substantive matters; (2) requesting the "ruling be treated like any other order after hearing issued in any family law or civil matter"; (3) requesting that any reconsideration of the ruling proceed under Code of Civil Procedure section 1008 and "by the briefing Code"; (4) stating, as a procedural matter, the parties and judge needed to review the hearing transcript, which would be available around March 3, 2017; and (5) explaining the "request for the standard briefing protocol and schedule" was to "assure that the parties' stipulation and order appointing a private judge is complied with and due process followed here" and to provide her counsel with sufficient time and ability to represent her.

The judge responded to wife, "[p]ursuant to the holding in Le Francois v. Goel (2005) 35 Cal.4th 1094, I have the authority and ability to reconsider a ruling I made sua sponte which is exactly what I'm going to do." The judge further explained she needed to review the hearing transcript based on wife's comments because her memory differed from wife's. She continued: "As part of my reconsideration I am providing, although I am not required to do so, an opportunity for counsel to provide a written argument of no more than 5 pages. [¶] I am happy to provide you more time to provide your argument…no due date has as yet been set. Obviously I need to read the transcript before I am able to reconsider the ruling. [¶] The written argument, from both counsel, will be due by March 15. That way I'll have the transcript and both written arguments to read together. [¶] In the mean time [*sic*], the current orders while under reconsideration remain in full force and effect." Wife indicated "[n]o objection" to the "email re: scheduling and current order remaining in place while this matter is under

3

reconsideration." Husband stated his objection that the 2-21 Order should be a tentative order without full force and effect, which the judge noted.

On March 3, 2017, wife provided the judge with copies of the reporter's transcript from the February 17, 2017, hearing. In the same e-mail, wife requested an "expedited hearing date and briefing schedule" to seek relief from the court "to address [husband's] failure to comply with the Order After Hearing by failing to make the first spousal support payment that was due on March 1, 2017." Such proposed relief included an order barring husband from attacking the 2-21 Order based on his noncompliance with the order pursuant to the disentitlement doctrine. The judge responded that wife would need to file a request for such relief in the trial court. Wife then asked for clarification regarding the 5-page limitation and for guidance on the issues to be addressed in the parties' submissions. The judge responded the 5-page limitation applied to argument only and added the parties were not allowed to submit additional declarations or exhibits. She further advised briefing should address "[t]he issue of what amount of pendente lite spousal shall be paid."

Both parties submitted briefs. Husband argued "[t]he only problem is that [the amount ordered in the 2-21 Order] greatly exceeds [husband's] monthly cash flow." Husband requested that the court either change the amount of the spousal support to below the guideline amount or order each party to pay his or her own attorney and professional fees, and for wife to pay all of the house-related expenses.

Wife argued there was no arithmetic error in the 2-21 Order and "there has been no *additional findings or new evidence presented whatsoever*" to support reconsideration under Code of Civil Procedure section 1008, "which governs and limits the grounds upon which a motion for reconsideration can be heard to new facts or law -- neither of which exist[s] here." Wife disagreed that the court had authority under *Le Francois* to reconsider its ruling in the absence of a motion. She further argued husband should be barred from affirmative relief regarding the 2-21 Order under the disentitlement doctrine

4

because he violated the 2-21 Order by failing to make the first required spousal support payment due on March 1, 2017.

On March 23, 2017, the court issued a "reconsidered" ruling and order (3-23 Order). In the 3-23 Order, the court explained it "was reconsidering its Ruling and Orders sua sponte pursuant to the holding in Le Francois v. Goel (2005) 35 Cal.4th 1094" and issued "on its own motion the reconsidered Rulings and Orders." The court noted that it "offered both counsel the opportunity to set another date to come in and provide additional argument related to the ruling issued on February 21, 2017" or, "in the alternative, for each counsel to submit further written argument regarding" the 2-21 Order. "Both counsel agreed that written argument would be submitted no later than March 15, 2017."

The 3-23 Order sets forth wife's objections stating the court does not have the authority to reconsider the prior ruling, and the court's response that the *Le Francois* court "found that while legislation may limit what matters are brought by parties before the court, it may NOT limit a court's power to reconsider its rulings on its own." The court explained "[w]hile there was no math error" in the 2-21 Order, there were three other factors the court wanted to address. The 3-23 Order, among other things, modifies downward from the 2-21 Order the temporary spousal support amount awarded to wife, and imposes an effective date retroactive to March 1, 2017. Wife appeals.

DISCUSSION

We exercise independent de novo review of wife's claims that the trial court incorrectly interpreted and applied statutory and constitutional law.[3] (*Board of Administration v. Wilson* (1997) 57 Cal.App.4th 967, 973; *Conservatorship of Christopher A.* (2006) 139 Cal.App.4th 604, 609-610.)

---

**3** Wife does not argue that the evidence was insufficient to support the court's reconsidered 3-23 Order.

I

*The Court Had Authority Sua Sponte To Correct The Temporary Support Order*

It appears wife's argument is three-fold:  first, a trial court's inherent authority to reconsider its orders, as discussed in *Le Francois*, does not apply to a temporary support order because it is a final rather than interim order; second, the trial court lost jurisdiction to modify the 2-21 Order as a matter of law because it did not expressly reserve jurisdiction in that order, as required under *In re Marriage of Gruen* (2011) 191 Cal.App.4th 627 and *In re Marriage of Freitas* (2012) 209 Cal.App.4th 1059; and third, if the trial court had authority to reconsider the 2-21 Order on its own motion, it could not modify the order retroactively because it is precluded from doing so under sections 3603, 3651, subdivision (c), and 3653, subdivision (a), and the various cases interpreting those statutes.

To frame the analysis, we begin with the legal background regarding the interpretation of the Family Code statutes and the court's inherent authority to reconsider its own motions.  We then apply those legal principles to conclude the court had authority sua sponte to correct the 2-21 Order.

A

*Legal Background*

1

*Code Prohibition On Retroactive Modifications Of Temporary Spousal Support Orders*

Pending final resolution of a marital dissolution case, the court may order one spouse to support the other.  (§ 3600.)  The purpose of a temporary spousal support order "is to maintain the living conditions and standards of the parties as closely as possible to the status quo, pending trial and the division of the assets and obligations of the parties." (*In re Marriage of McNaughton* (1983) 145 Cal.App.3d 845, 849.)  Such an order is operative from the time of pronouncement and "is directly appealable as a final judgment."  (*Greene v. Superior Court* (1961) 55 Cal.2d 403, 405.)  If a party does not

6

appeal the order, the issues determined by the order are res judicata. (*In re Marriage of Gruen*, *supra*, 191 Cal.App.4th at p. 638.)

A temporary spousal support order "may be modified or terminated at any time except as to an amount that accrued before the date of the filing of the notice of motion or order to show cause to modify or terminate." (§ 3603; see also §§ 3651, subd. (c)(1) [same but noting an exception inapplicable here], 3653, subd. (a) ["[a]n order modifying or terminating a support order may be made retroactive to the date of the filing of the notice of motion or order to show cause to modify or terminate, or to any subsequent date" subject to exceptions inapplicable here].) While numerous cases have discussed the application of this statutory prohibition against retroactive modification of temporary spousal support orders, wife points us to two specific cases -- *Gruen* and *Freitas*.[4]

In *Gruen*, a husband filed for dissolution of marriage and applied for an order to show cause concerning child and spousal support, among other matters. (*In re Marriage of Gruen*, *supra*, 191 Cal.App.4th at p. 632.) The trial court entered an order directing the husband to pay temporary support in the amount of $40,000 per month, and appointed an expert to assist in determining the amount of husband's income available for support. (*Id.* at pp. 632-633.) Later that month, the husband asked the court to take his pending order to show cause off calendar. (*Id.* at p. 633.) Several months later, after the expert's report was issued, the husband moved for retroactive reimbursement, seeking a reduction in his support obligation back to when the court entered the original order to pay

---

[4] Wife cites several other cases finding a trial court lacked jurisdiction to retroactively modify a temporary spousal support order, e.g., *In re Marriage of Williamson* (2014) 226 Cal.App.4th 1303, 1318 [trial court lacked jurisdiction to retroactively modify temporary order because it did not reserve jurisdiction to do so] and *In re Marriage of Sabine & Toshio M.* (2007) 153 Cal.App.4th 1203, 1213 [trial court has no discretion to waive or forgive part of final support arrearages debt]. Those cases do not further the analysis for purposes of her argument and are, therefore, not addressed in greater detail.

temporary support.  (*Id.* at pp. 633-634.)  The trial court granted husband's request.  (*Id.* at pp. 635-636.)

The appellate court reversed, noting the original order was "final" and "immediately operative and directly appealable."  (*In re Marriage of Gruen*, *supra*, 191 Cal.App.4th at p. 639.)  Accordingly, wife was "entitled to rely on the amount of temporary support ordered without the threat of having to repay or credit [husband] with any portion of accrued support."  (*Ibid.*)  The court also held that, to the extent the modifications of the original order were prospective, they exceeded the trial court's jurisdiction because they were not based on any pending motion or order to show cause for modification. (*Ibid.*)

*Gruen* was later distinguished in *Freitas*.  In *Freitas*, the trial court entered a temporary spousal support award in favor of husband but reserved jurisdiction over whether to amend the support award, stating husband could submit additional evidence pertaining to wife's income.  (*In re Marriage of Freitas*, *supra*, 209 Cal.App.4th at pp. 1061-1062.)  The court later held that, under *Gruen*, it lacked jurisdiction to reassess wife's income for September and October 2010.  (*In re Marriage of Freitas*, at p. 1065.)  The appellate court reversed, distinguishing *Gruen* in a couple of ways.  (*Id.* at p. 1062.)

First, in *Gruen*, the original support order was "final" and "directly appealable," whereas the *Freitas* trial court had expressly reserved jurisdiction to amend its original support awards based on further consideration of evidence.  (*In re Marriage of Freitas*, *supra*, 209 Cal.App.4th at pp. 1073-1074.)  "Thus, unlike in *Gruen*, . . . the parties' clear expectation was that the original support awards *were not* final as to these months. [Citation.] . . .  The trial court's original child and spousal support awards were not fully dispositive of the rights of the parties with respect to the amount of support to be awarded for September and October 2010, and therefore did not constitute final support orders as to those months."  (*Id.* at pp. 1074-1075.)  The court held "neither *Gruen*, nor the authority upon which *Gruen* is based, precludes a trial court from reserving jurisdiction to

8

amend a *nonfinal* order based on the anticipated presentation of additional evidence." (*Id.* at p. 1075.)

Second, in *Gruen*, husband had taken his original order to show cause off calendar and there was no pending motion to modify the support order. (*In re Marriage of Freitas*, *supra*, 209 Cal.App.4th at p. 1075.) In contrast, the *Freitas* trial court specifically reserved jurisdiction, meaning the trial court "continued to have jurisdiction to render a final order on" husband's order to show cause. (*Ibid.*)

Distilled simply, *Gruen* and *Freitas* together establish the rule that a trial court lacks jurisdiction to retroactively modify a temporary support order to any date earlier than the date on which a proper pleading seeking modification of such order is filed (*In re Marriage of Gruen*, *supra*, 191 Cal.App.4th at p. 631), unless the trial court expressly reserves jurisdiction to amend the support order such that the parties' clear expectation is the original support award is not final (*In re Marriage of Freitas*, *supra*, 209 Cal.App.4th at pp. 1062, 1075).

2

*A Court's Inherent Authority To Reconsider Its Own Orders*

The interplay between statutory directives and a court's inherent authority to reconsider its own orders was addressed by our Supreme Court in *Le Francois*. In *Le Francois*, a judge granted a motion for summary judgment on grounds previously denied by another judge in the same case more than a year prior. (*Le Francois v. Goel*, *supra*, 35 Cal.4th at p. 1096.) Our Supreme Court had to "decide whether the court had authority to consider the new motion even though it was not based on either new facts or new law" because "Code of Civil Procedure sections 437c, subdivision (f)(2), and 1008 seemingly prohibit a party from making such a new motion." (*Ibid.*) It appeared the statutory language could be read to deprive courts of jurisdiction to reverse their own earlier rulings.

After "uphold[ing] the statutes to the extent they apply to motions filed by the parties," the court explained "[w]hether these statutes can validly limit the court's authority to act on its own motion to correct its own errors presents quite a different question." (*Le Francois v. Goel*, *supra*, 35 Cal.4th at p. 1104.) "Such a limitation might go too far" and infringe on the constitutional principle of separation of powers -- that is "[t]he Legislature may regulate the courts' inherent power to resolve specific controversies between parties, but it may not defeat or materially impair the courts' exercise of that power." (*Id.* at pp. 1103, 1104.) The court explained, however, that it did not need to decide the constitutional question because it could, to avoid difficult constitutional questions, interpret the statutes as "imposing a limitation on the parties' ability to file repetitive motions, but not on the court's authority to reconsider its prior interim rulings on its own motion." (*Id.* at p. 1105.)

The court found Code of Civil Procedure section 437c, subdivision (f)(2), "can easily be so interpreted" because "that subdivision merely states that 'a *party* may not' make a motion that violates its provisions." (*Le Francois v. Goel*, *supra*, 35 Cal.4th at p. 1105.) "It says nothing limiting the *court's* ability to act." (*Ibid.*) The "question w[as] a bit more complex regarding [Code of Civil Procedure] section 1008," because the language of "the statute and its legislative history suggest that it has a broader meaning and does restrict the court's authority to act on its own." (*Ibid.*) After weeding through the complexities, including the legislative intent, the court concluded both statutes "limit the parties' ability to file repetitive motions but do not limit the court's ability, on its own motion, to reconsider its prior interim orders so it may correct its own errors." (*Id.* at p. 1107.)

Our Supreme Court noted that a judge may act on his or her own motion "whether the 'judge has an unprovoked flash of understanding in the middle of the night' [citation] or acts in response to a party's suggestion," "although any such communication should never be ex parte." (*Le Francois v. Goel*, *supra*, 35 Cal.4th at p.1108.) "If a court

10

believes one of its prior interim orders was erroneous, it should be able to correct that error no matter how it came to acquire that belief." (*Ibid.*) "The court need not rule on any suggestion that it should reconsider a previous ruling and, without more, another party would not be expected to respond to such a suggestion." (*Ibid.*) "To be fair to the parties, if the court is seriously concerned that one of its prior interim rulings might have been erroneous, and thus that it might want to reconsider that ruling on its own motion -- something we think will happen rather rarely -- it should inform the parties of this concern, solicit briefing, and hold a hearing." (*Ibid.*) "Then, and only then, would a party be expected to respond to another party's suggestion that the court should reconsider a previous ruling." (*Id.* at pp. 1108-1109.) This procedure provides a reasonable balance between the conflicting goals of limiting repetitive litigation and permitting a court to correct its own erroneous interim orders. (*Id.* at p. 1109.)

Because the court addressed only interim orders in the *Le Francois* decision, and noted in a footnote that "[w]hat we say about the court's ability to reconsider *interim* orders does not necessarily apply to *final* orders, which present quite different concerns" (*La Francois v. Goel*, *supra*, 35 Cal.4th at p. 1105, fn. 4), it was unclear whether or how the analysis for final orders would differ. This question was addressed in *In re Marriage of Barthold* (2008) 158 Cal.App.4th 1301.

In *Barthold*, the judgment of dissolution provided wife would get a bonus if the house was listed for sale and sold within a certain amount of time. (*In re Marriage of Barthold*, *supra*, 158 Cal.App.4th at p. 1304.) After the house was sold, husband argued wife was not entitled to the listing bonus and wife moved unsuccessfully to enforce her entitlement to it. (*Id.* at pp. 1304-1305.) Wife filed a motion for reconsideration, which husband opposed. (*Id.* at pp. 1305-1306.) Although the trial court determined wife's motion did not meet the statutory requirements of Code of Civil Procedure section 1008, the judge said he realized he had made a mistake in denying her original motion, by " 'completely miss[ing] the most important point' " raised by wife. (*Id.* at p. 1306.) The

11

judge then granted wife's reconsideration motion and found her entitled to the listing bonus. (*Id*. at pp. 1306-1307.) Husband appealed.

The Court of Appeal affirmed. Husband argued, among other things, the court's inherent authority to reconsider orders only extended to interim rulings. (*In re Marriage of Barthold*, *supra*, 158 Cal.App.4th at p. 1312.) The court noted "[it] read the Supreme Court's footnote simply as a cautionary statement that its holding in *Le Francois* may not apply to *all* final orders, an issue not examined in that case inasmuch as the order under review was interim." (*Ibid*.) The court further explained Code of Civil Procedure section 1008, subdivision (e), specifically states it applies to all applications to reconsider any order, whether interim or final. (*Ibid*.) Accordingly, the court held "a court may reconsider final as well as interim orders on its own motion." (*Ibid*.) In a footnote, the court did, however, caveat that "th[e] appeal d[id] not present, and [it] therefore d[id] not decide, the issue whether a trial court can reconsider an appealable order on its own motion after the time to appeal from that order has expired." (*Id*. at p. 1313, fn. 9; compare with, *Safaie v. Jacuzzi Whirlpool Bath, Inc.* (2011) 192 Cal.App.4th 1160, 1173 [*Le Francois* does "not state or suggest a trial court has the authority to reconsider *final orders* after they have been affirmed on appeal"].)

The court upheld the trial court's use of its inherent authority, explaining, while wife submitted new evidence in support of her motion, "the judge stated that the basis for his ruling was his rereading of the papers submitted with the original motion, and the order did not rely on or even mention [wife's] additional evidence." (*In re Marriage of Barthold*, *supra*, 158 Cal.App.4th at p. 1309.) The *Barthold* court "stress[ed] that in order to grant reconsideration on its own motion, the trial court must conclude that its earlier ruling was wrong, and change that ruling *based on the evidence originally submitted*." (*Id.* at p. 1314.)

We later agreed with the *Barthold* court's decision in *In re Marriage of Herr* (2009) 174 Cal.App.4th 1463. Specifically, we explained the "trial court's

12

reconsideration on its own motion in *Barthold* was proper because it limited itself to changing its mind based on the evidence submitted in connection with the wife's original motion." (*In re Marriage of Herr*, at pp. 1469-1470.) In contrast, because the trial court in *Herr* reexamined the factual issues after directing the parties to submit new declarations and present additional evidence, its action constituted an order granting a new trial and did "not fall under the rubric of 'reconsideration.' " (*Id*. at p. 1465.) "Although a trial court has inherent authority to correct an erroneous ruling or order on its own motion, it has no inherent authority to order a new trial." (*Ibid*.)

B

*Application To The Court's Reconsideration Of The 2-21 Order*

Wife attempts to distinguish *Le Francois* and *Barthold* on the grounds that "[n]either of th[o]se two cases involved the modification of a *final* order awarding temporary spousal support" governed under the sections applicable here, and argues *Gruen* and *Freitas* are controlling. She further argues the court improperly reconsidered the 2-21 Order based on husband's "ex parte" communications. We disagree.

The principles espoused in *Le Francois* and *Barthold* are not circumscribed to the subject matter of the underlying cases or limited to the statutes at issue therein. In *Le Francois*, our Supreme Court analyzed statutes that traverse all types of subject matter areas, i.e., Code of Civil Procedure sections 1008 and 437c, subdivision (f)(2). (*Le Francois v. Goel*, *supra*, 35 Cal.4th at p. 1096.) The question before the court was whether a statute "can validly limit the court's authority to act on its own motion to correct its own errors." (*Id*. at p. 1104.) The court explained that a statute "violates the separation of powers doctrine embodied in the California Constitution" if it seeks to "defeat or materially impair the court's exercise of its inherent constitutional authority to reconsider its interim orders." (*Nickolas F. v. Superior Court* (2006) 144 Cal.App.4th 92, 111.) In *Barthold*, the court considered, in pertinent part, whether a trial court's inherent authority, as explained in *Le Francois*, may extend to final orders and answered the

13

question in the affirmative. (*In re Marriage of Barthold*, *supra*, 158 Cal.App.4th at pp. 1312-1313.) The *Le Francois* and *Barthold* principles apply with equal force to all cases in which a court uses its inherent authority to reconsider a prior order.

If the Family Code statutes were read to preclude a court from reconsidering a temporary support order sua sponte to correct its own error, the interpretation would clearly raise separation of powers concerns, as discussed in *Le Francois*. Further, if the statutes were read to allow a court to sua sponte reconsider a prior erroneous temporary support order, but to preclude the court from retroactively modifying the order, the statutes would strip the court of its ability to *effect* the use of its inherent authority. In other words, it would *practically* render such authority meaningless by placing temporal restrictions on the court's ability to correct its error -- tying it to a *party's* filing of a motion or order to show cause. Such a proposition cannot be squared with *Le Francois* either because it would require a court to subject the parties to an erroneous order even when the court realizes it misunderstood or misapplied the law. This would result in the miscarriage of justice our Supreme Court warned against.

We heed our Supreme Court's directive in *Le Francois*, reading the statutes in a manner to avoid the constitutional issue of separation of powers. (*Le Francois v. Goel*, *supra*, 35 Cal.4th at p. 1105.) Thus, we read the statutes as *not* applying to the court's authority to reconsider its prior rulings on its own motion *to correct an error*. (*Ibid*.) This interpretation does not implicate the decisions in *Gruen*, *Freitas*, and other cases interpreting the statutes, because none of those cases applied the statutes in the context of a trial court seeking to amend its own erroneous order sua sponte without consideration of additional or new evidence.[5] Accordingly, our interpretation does not nullify the statutes or conflict with the cases interpreting those statutes.

---

[5]     Relying on *In re Marriage of Freitas, supra*, 209 Cal.App.4th at pages 1068-1069, wife argues the court was required to find a change of circumstance warranting the

14

Here, the trial court explained that it was reconsidering the 2-21 Order on its own motion because, while there was no math error, there were three other factors it wanted to address. As wife acknowledged, when the court reconsidered the 2-21 Order, "there ha[d] been no *additional findings or new evidence presented whatsoever*." The trial court's reconsideration on its own motion was proper "because it limited itself to changing its mind based on the evidence submitted in connection with the [parties'] original motion[s]." (*In re Marriage of Herr*, *supra*, 174 Cal.App.4th at pp. 1469-1470; see *In re Marriage of Barthold*, *supra*, 158 Cal.App.4th at p. 1314.)

Wife further argues the court did not have inherent authority to reconsider the order because it acted in contravention of *Le Francois* when it revisited and modified the 2-21 Order based on "ex parte" communications from husband, i.e., the e-mails on February 22 and 23. Wife mischaracterizes the nature of the communications. (*Le Francois v. Goel*, *supra*, 35 Cal.4th at p.1108.)

"An ex parte communication is one where a party communicates to the court *outside* the presence of the other party." (*Nguyen v. Superior Court* (2007) 150 Cal.App.4th 1006, 1013, fn. 2; Black's Law Dict. (8th ed. 2004) p. 296 [an ex parte communication includes "[a] communication between counsel and the court when opposing counsel is not present"].) The prohibition against ex parte communication is " 'in essence, a rule of fairness meant to insure that all interested sides will be heard on an issue.' " (*Mathew Zaheri Corp. v. New Motor Vehicle Bd.* (1997) 55 Cal.App.4th 1305, 1317.)

It is undisputed that wife's counsel was included on all e-mails between husband's counsel and the court on the issue of reconsideration of the 2-21 Order. In fact, the

downward modification of the temporary support award. Because the court merely corrected its own erroneous order and did not modify it based upon additional evidence (the circumstances at issue in *Freitas* and the cases cited therein), there is no basis for applying such a requirement here.

15

pertinent e-mails were attached to *her* counsel's declaration in support of her opposition to reconsideration of the 2-21 Order, showing her counsel was copied on all those communications. Further, wife's counsel responded to a number of those e-mails detailing wife's opposition. While these communications occurred in an informal setting, there is simply no support for wife's assertion that those e-mails were ex parte communications.

The court's reconsideration of the 2-21 Order in response to husband's e-mails was furthermore permissible. "[I]f a court believes one of its prior orders was erroneous, it may correct that error no matter how it came to acquire that belief." (*In re Marriage of Herr*, *supra*, 174 Cal.App.4th at p. 1469; see *Brown, Winfield & Canzoneri, Inc. v. Superior Court* (2010) 47 Cal.4th 1233, 1248 [it is immaterial what may have triggered a trial court's insight that an order might be erroneous].)

Turning to wife's argument that the court's inherent authority to reconsider its orders is limited to interim orders, we agree with *Barthold* that such authority may extend to final orders, such as the order at issue here. (*In re Marriage of Barthold*, *supra*, 158 Cal.App.4th at p. 1312.) The order in *Barthold* was like the 2-21 Order in that it was a final order subject to appeal, but the time for appeal had not yet run at the time the judge reconsidered it. (*Id.* at p. 1313, fn. 9.) We see no reason to distinguish this case from *Barthold*.

We also note the court's reconsideration did not run counter to the policy rationale underlying the Family Code statutes that the parties should be entitled to rely on the amount of a temporary support order without the threat of having to repay or credit the other spouse or to pay additional sums in the future. (*In re Marriage of Gruen*, *supra*, 191 Cal.App.4th at p. 639.) The court notified the parties that it would reconsider the 2-21 Order a few days after it was issued and prior to the March effective dates. Additionally, the 2-21 Order was still subject to appeal when the court reconsidered it. Thus, wife had no settled expectations regarding the effect of the 2-21 Order when the 3-

16

23 Order was issued. Accordingly, we conclude the court had inherent authority to reconsider the 2-21 Order to correct its error and apply its modification retroactively.[6]

## II

### *The Court Did Not Violate Wife's Due Process Rights*

Wife argues *Le Francois* required the court to inform the parties of the concern with the order, solicit briefing, and hold a hearing, and "the trial court did none of these things," violating her due process rights. Not true.

First, wife received notice of the court's intent to reconsider the 2-21 Order on February 23, 2017 -- the day after the order was served. The judge sent two e-mails on February 23, 2017, first stating, "I have the authority to modify the orders and am considering doing so," and later affirming, "[p]ursuant to the holding in Le Francois v. Goel (2005) 35 Cal.4th 1094, I have the authority and ability to reconsider a ruling I made sua sponte which is exactly what I'm going to do." She also advised the reconsideration would address "[t]he issue [of] what amount of pendente lite spousal shall be paid."

---

[6] Wife argues the court erred in finding the disentitlement doctrine was inapplicable. The disentitlement doctrine was codified in the context of dissolution of marriage proceedings in Code of Civil Procedure section 1218, subdivision (b), which provides: "Any party, who is in contempt of a court order or judgment in a dissolution of marriage, dissolution of domestic partnership, or legal separation action, shall not be permitted to enforce such an order or judgment, by way of execution or otherwise, either in the same action or by way of a separate action, against the other party." We agree with the trial court that the disentitlement doctrine was inapplicable here because the court notified the parties that it was reconsidering the 2-21 Order prior to the March 1, 2017, payment date, and the court retroactively modified the order. Further, husband was not attempting to enforce the 2-21 Order against wife -- wife was the one seeking to enforce the order against husband.

17

Wife repeatedly argues the 3-23 Order is procedurally deficient because the trial court did not formally file a motion or an order to show cause prior to issuing its revised ruling. But there is plainly no requirement for a *court* to file a *motion* to be considered by itself. *Parties* file *motions* and *courts* issue *orders* on those motions. (*Case v. Lazben Financial Co.* (2002) 99 Cal.App.4th 172, 187 ["Clearly, trial courts do not make applications, motions, or renewals of motions to themselves"].)

There are also no specific procedural requirements associated with a court's inherent authority to reconsider its own prior order -- and wife does not cite to any authority to the contrary. As we noted in *Herr*, a judge's inherent authority to reconsider and correct erroneous orders are "independent of the statutory limitations imposed on reconsideration motions initiated by the parties." (*In re Marriage of Herr*, *supra*, 174 Cal.App.4th at p. 1469.) While wife alternatively argues husband was required to file a motion or serve notice that the 2-21 Order was going to be modified, the court's reconsideration of the 2-21 Order was made sua sponte and, therefore, husband was not required to file a formal motion for reconsideration under Code of Civil Procedure section 1008.

Second, the court solicited briefing regarding its reconsideration of the order and the parties each filed a brief. While wife requested that any reconsideration proceed under Code of Civil Procedure section 1008 and "by the briefing Code," there are no specific page requirements when a court acts pursuant to its inherent authority. California Rules of Court rule 5.2(g), provides that "[i]n the exercise of the court's jurisdiction under the Family Code, if the course of proceeding is not specifically indicated by statute or these rules, any suitable process or mode of proceeding may be adopted by the court that is consistent with the spirit of the Family Code and these rules." Wife does not argue that she would have benefited from more allowable briefing pages, that she would have made additional arguments, or that she was prejudiced by the five-page limit. Thus, we have no cause to find error. (See Cal. Const., art. VI, § 13

18

[fundamental precept of appellate jurisprudence is error that is not harmful or prejudicial is not reversible].)

Third, while the court did not hold a hearing, it did invite the parties to argue the issues but indicated it "prefer[red] a 5 page written argument from each of [them]." Wife argues she requested that the court "adopt a briefing and hearing schedule that complied with the Code" but the record shows she only asked for "the standard briefing protocol and schedule." Wife did not ask for a hearing on the court's reconsideration of the 2-21 Order. Wife's request for a *hearing* schedule pertained to her request for an "expedited hearing date and briefing schedule" to seek relief from the court "to address [husband's] failure to comply with the Order After Hearing by failing to make the first spousal support payment that was due on March 1, 2017." The court responded that wife would have to file an appropriate motion because the matter was not before the court.

Accordingly, the court gave the parties the opportunity to request a hearing and wife cannot now complain of her failure to do so. Moreover, wife makes no argument or showing that she was prejudiced by the lack of an oral argument. Wife argued her position in the e-mail exchanges with husband and the court on February 23, 2017, and also in the briefing she filed with the court. We note the opportunity to be heard does not necessarily compel an oral hearing. (See *Lewis v. Superior Court* (1999) 19 Cal.4th 1232, 1247.)

Wife cites two cases for the proposition that "[s]imilar failures by trial courts to satisfy due process in taking *sua sponte* acts have resulted in reversal." Neither case is similar, as she contends. In *Bricker v. Superior Court* (2005) 133 Cal.App.4th 634, "petitioner was not notified prior to the readiness conference that [the court] was considering dismissing her appeals." (*Id*. at p. 639.) "At the beginning of the readiness

conference, and without even mentioning to the parties at that time that it was considering the question, [the court] announced its decision that petitioner had no right to appeal. [The court's] sua sponte ruling, which effectively dismissed petitioner's appeals from the 11 small claims judgments, plainly violated petitioner's due process rights." (*Ibid*.) The trial court was directed to "properly notice and hear the dismissal matter anew, permitting the parties to present evidence and argument concerning whether petitioner's appeals should be permitted to proceed." (*Ibid*.)

In *Moore v. California Minerals etc. Corp.* (1953) 115 Cal.App.2d 834, the trial court essentially granted an unnoticed motion for judgment on the pleadings following the parties' opening statements. (*Id*. at pp. 835-836.) The trial court found the answer failed to deny the allegations of the complaint and raised no issue as a matter of law. (*Id*. at p. 836.) The appellate court reversed, concluding defendant's due process rights had been violated. (*Id*. at pp. 836-837.) "The ruling came as a surprise to defense counsel, who had no opportunity to point out the sufficiency of the answer to raise an issue as to [the merits]." (*Id*. at p. 836.) "The parties were prepared to go to trial, and but for the precipitate and unexpected action of the court would have done so." (*Ibid*.) The appellate court explained, "[e]lementary principles of due process support [the] conclusion that if, during a trial, the court, *sua sponte*, unearths a point of law which it deems to be decisive of the cause, the party against whom the decision impends has the same right to be heard before the decision is announced that he has to produce evidence upon the issues of fact." (*Id*. at p. 837.)

In contrast to the circumstances in *Bricker* and *Moore*, wife had ample notice of the court's reconsideration of the 2-21 Order, was allowed to file a brief in response (and did file such a brief), and was given the opportunity to make her arguments. There was no due process violation.

20

## DISPOSITION

The trial court's order is affirmed.  Husband shall recover his costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1).)

/s/
Robie,  J.

We concur:

/s/
Hull, Acting P. J.

/s/
Hoch, J.

Filed 6/4/18

<u>CERTIFIED</u> <u>FOR</u> <u>PUBLICATION</u>

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| In re the Marriage of PHILLIP and RACHELLE SPECTOR. | C084628 |
| PHILLIP SPECTOR,<br><br>        Respondent,<br><br>    v.<br><br>RACHELLE SPECTOR,<br><br>        Appellant. | (Super. Ct. No. STAFLDWOC20160001460)<br><br><br>ORDER CERTIFYING OPINION FOR PUBLICATION |

THE COURT:

The opinion of this court filed May 16, 2018, was not certified for publication in the Official Reports. For good cause it now appears the opinion should be published in its entirety in the Official Reports and it is so ordered.

BY THE COURT:

 /s/
Hull, Acting P. J.

 /s/
Robie,  J.

 /s/
Hoch, J.

1

EDITORIAL LISTING

APPEAL from a judgment of the Superior Court of San Joaquin County, Reva G. Goetz, Judge.  (Retired judge of the L.A. Sup. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.)  Affirmed.

Brian J. Kramer, P.C. and Brian J. Kramer, for Appellant.

Law Offices of James R. Eliaser, James R. Eliaser and Joanne D. Ratinoff, for Respondent.